Argued and submitted October 7, 1998; taken En Banc and resubmitted February 3, reversed and remanded with instructions April 28, 1999

## MARVIN PEEK,
*Appellant,*

*v.*

## S. Frank THOMPSON,
Superintendent,
Oregon State Penitentiary,
*Respondent.*

## (97C-12445; CA A100853)

980 P2d 178

Jay Edwards argued the cause and filed the brief for appellant.

John T. Bagg, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Deits, Chief Judge, and Edmonds, De Muniz, Landau, Haselton, Armstrong, Wollheim and Brewer, Judges, and Warren, Senior Judge.

ARMSTRONG, J.

Warren, S. J., concurring.

Deits, C. J., dissenting.

## ARMSTRONG, J.

Plaintiff[1] appeals a judgment dismissing a writ of habeas corpus. He asserts that the Board of Parole and Post-Prison Supervision (the Board) failed to follow the applicable statute and administrative rules in extending his parole release date for two years. We reverse.

Many of the arguments that plaintiff raises parallel those that we discussed in *Weidner v. Armenakis*, 154 Or App 12, 959 P2d 623 (1998), *withdrawn by order* July 13, 1998, *reasoning reaffirmed and readopted in Merrill v. Johnson*, 155 Or App 295, 964 P2d 284, *rev den* 328 Or 40 (1998),[2] and involve the Board's authority to extend a parole release date under ORS 144.125(3) (1991). That statute requires the existence of a severe emotional disturbance constituting a danger to the health or safety of the community before the Board may extend the release date. In *Weidner,* we concluded that ORS 144.125(3) (1991) did not require that there be a psychiatric or psychological diagnosis of that condition. Rather, we held that it was the Board's responsibility to decide whether a prisoner had such a condition and that in doing so it could rely on all the evidence in the record; it was not limited to considering only the psychiatric or psychological report.

In this case, plaintiff relies on an administrative rule that we did not consider in *Weidner*, because it was not cited or argued to us. That rule shows that, at least during the period that the rule was in effect, the Board believed that a psychiatric or psychological diagnosis that met the statutory requirements was essential to the Board's authority to extend the release date. Thus, the broader construction that we gave the statute in *Weidner,* to which we adhere in this opinion, is not controlling for that period. Because plaintiff committed his offenses when the rule was in effect, it continues to apply to the Board's consideration of his case. The

---

[1] As has become our style in habeas corpus cases, in this opinion we will refer to the party seeking the writ as "plaintiff," although it would be more accurate to describe him as "petitioner."

[2] Although we withdrew our opinion in *Weidner* after we learned that the case had become moot, for convenience we will refer to it in this opinion, although technically *Merrill* is the precedential case.

Board, however, followed the approach that we approved in *Weidner,* with the result that it has not decided whether the psychologist's diagnosis meets the statutory standard. The trial court on remand should give the Board an opportunity to make that decision.

Plaintiff has been imprisoned since early 1989 for offenses that he committed in late 1988. Shortly after his imprisonment, the Board applied the matrix system that was then in effect and set a parole release date of October 30, 1997. On March 7, 1997, a psychologist interviewed plaintiff; the psychologist prepared a report a few days later. On May 7, the Board issued an order extending plaintiff's parole release date to October 30, 1999. It gave the following explanation of its decision:

> "The [B]oard, based on all the information it is considering at this hearing finds that the doctor's diagnosis coupled with all the information it is considering, does result in a · finding of a present severe emotional disturbance that constitutes a danger to the health or the safety of the community. The [B]oard has considered this matter under the laws in effect at the time of the commitment offense."

The first issue is whether the Board could extend plaintiff's release date without first determining that the psychologist had diagnosed plaintiff with a severe emotional disturbance that constitutes a danger to the health or safety of the community. That issue arises under ORS 144.125(3) (1991), which provided at the time of plaintiff's offenses:

> "If a psychiatric or psychological diagnosis of present severe emotional disturbance such as to constitute a danger to the health or safety of the community has been made with respect to the prisoner, the board may order the postponement of the scheduled parole release until a specified future date."

In *Weidner,* we held that the statute referred to a legal, rather than medical, standard; that an express diagnosis that met all of the statutory criteria was therefore not necessary; and that the Board was entitled to use any information before it in determining whether the prisoner's condition satisfied the statutory criteria. 154 Or App at 17. We rejected the dissent's argument that the statute required the Board to

determine from the psychiatric or psychological report alone whether there was a diagnosis that gave the Board the authority to extend the release date. 154 Or App at 21-22 (Warren, J., dissenting).

In this case, plaintiff has cited OAR 255-60-006 (1988) in support of the position that we rejected in *Weidner*, an administrative rule that we did not consider in that case. That rule shows that, at the time of plaintiff's offenses, the Board understood its role in very much the way that the dissent in *Weidner* suggested. OAR 255-60-006 (1988) covered a number of issues related to a prisoner's release on parole. The relevant portions are subsections (7) and (8):

"(7) The Board may order a psychiatric/psychological report anytime prior to release. If the record indicates that a psychiatric or psychological condition of severe emotional disturbance, such as to constitute a danger to the health or safety of the community, is present, the Board may consider deferring parole release until a specified future date.

"(8) *If the evaluation does not make a finding* of severe emotional disturbance such as to constitute a danger to the health or safety of the community, *the Board shall affirm the parole release date and set parole conditions.*"

(Emphasis added.) Plaintiff also points out that in 1983 the Board's chair stated that the Board had no basis to refuse to release another prisoner, because all three psychological reports indicated that he was not emotionally disturbed or dangerous. The Board's attorney's legal opinion was that its hands were tied. *See O'Bremski v. Maass*, 905 F2d 281, 285 (9th Cir 1990).

■ The Board has authority to adopt rules applicable to parole. ORS 144.050. OAR 255-60-006(8) was such a rule, and the Board adopted it within its delegated authority. The rule expressly required the Board to affirm a parole release date unless the *evaluation* made the finding that ORS 144.125(3) contemplates.[3] It is, of course, axiomatic that an

---

[3] The dissent suggests that "the evaluation" in OAR 255-60-006(8) (1988) refers to the Board's evaluation. There is no textual foundation for that conclusion. Nothing else in the rule refers to a *Board* evaluation. On the other hand, the

agency must follow its own rules. *Moore v. OSP*, 16 Or App 536, 519 P2d 389 (1974); *see also Aetna Casualty & Surety Co. v. Sue A. Blanton, D.C.*, 139 Or App 283, 287, 911 P2d 363 (1996). Even if an agency is not required to adopt a rule, once it has done so it must follow what it adopted. *Harsh Investment Corp. v. State Housing Division*, 88 Or App 151, 744 P2d 588 (1987), *rev den* 305 Or 273 (1988). The rule may limit what an agency would otherwise be able to do. "An agency which is vested with discretion by statute may limit its own discretion in its regulations." *Wyers v. Dressler*, 42 Or App 799, 807, 601 P2d 1268 (1979), *rev den* 288 Or 527 (1980), *overruled on other grounds by Mendieta v. Division of State Lands*, 148 Or App 586, 941 P2d 582 (1997), *rev dismissed* 328 Or 331 (1999). Thus, the question is not, as it was in *Weidner*, what the statute requires; rather, the question is what the rule requires.[4]

 As the majority and dissenting opinions in *Weidner* show, it is possible to read ORS 144.125(3) in more than one way. In OAR 255-60-006(8), the Board gave it a meaning that was closer to that of the *Weidner* dissent than of the *Weidner* majority. So long as that rule was in effect, it required the Board to treat the statute as requiring a formal finding in the psychiatric or psychological evaluation as a prerequisite to the Board's authority to extend a prisoner's parole release date. That requirement imposes a greater limit on the Board's authority to extend a release date than does allowing

reference to "the" evaluation follows immediately after a reference to a psychiatric or psychological report and most logically refers to it—indeed, there is nothing else in the rule to which "the evaluation" can refer. The use of "the" suggests that the rule refers to a specific evaluation that it has already identified; only the psychiatric or psychological report would qualify. The writer of the rule simply used two different terms to refer to the same thing.

[4] That is not, as the dissent suggests, an issue of delegation. The Board has not delegated anything. It retains its discretion under ORS 144.125(3) to determine whether to extend the parole release date for a person who satisfies the criteria of the statute and the rule. All that the Board has done is to establish the type of evidence that is necessary to satisfy the statutory standard. The Board, of course, determines whether the evidence meets that standard. In that respect, the rule is similar to the requirement of a writing to prove the existence of certain agreements, *see* ORS 41.580, or the requirement of evidence corroborating a confession or the testimony of an accomplice. *See* ORS 136.425; ORS 136.440. It is even closer to the rule that expert testimony is usually necessary to prove negligence in professional malpractice cases. *See, e.g., Griffith v. Blatt*, 158 Or App 204, 211, 973 P2d 385 (1999); *Docken v. Ciba-Geigy*, 101 Or App 252, 790 P2d 45, *rev den* 310 Or 195 (1990).

the Board to make its own determination, based on all the evidence in the record, of the prisoner's condition. The rule, thus, is more favorable to a prisoner than is the view of the statute that we adopted in *Weidner*. Because the rule was in effect at the time of plaintiff's offenses and was more favorable to plaintiff than *Weidner* held ORS 144.125(3) to be,[5] it would violate the *ex post facto* provisions to apply ORS 144.125(3), rather than OAR 255-60-006(8), to plaintiff. *See Williams v. Board of Parole*, 112 Or App 108, 112, 828 P2d 465, *rev dismissed* 313 Or 300 (1992) (rules made pursuant to delegated authority are subject to *ex post facto* analysis). Because the Board did not determine whether the psychological report made a finding that satisfied the statutory conditions, it erred in extending plaintiff's parole release date.[6]

◼ We next consider whether the psychologist's report would permit the Board to find that the psychologist diagnosed plaintiff as having a severe emotional disturbance that constitutes a danger to the health or safety of the community.[7] If it would not, then under the rule the Board did not have the authority to extend plaintiff's parole release date and the trial court on remand should direct plaintiff's release. If it would, then the trial court on remand should direct plaintiff's release unless the Board, under the relevant legal authority including OAR 255-60-006(8) (1988), determines to extend plaintiff's parole release date. *See Meadows v. Schiedler*, 143 Or App 213, 221, 924 P2d 314 (1996) (similar conditions on remand when Board improperly applied amended statute).

Because of the importance of the psychological report under the rule, we summarize it at some length. The

[5] The Board amended these rules effective April 5, 1990. We do not consider the meaning or effect of the amendments.

[6] Plaintiff also relies on rules of the Corrections Division involving the transfer of inmates to and from the Mental Health Division as establishing the criteria that a Board finding must meet. Those rules are not rules of the Board and are otherwise irrelevant to a decision to release a prisoner on parole. We do not consider them further.

[7] Because of its failure to recognize the effect of OAR 255-06-060 (1989), the Board did not focus on whether the psychologist's report satisfied the criteria of the rule. Instead, it drew its own conclusions about plaintiff's condition. The dissent would rely on those conclusions to sustain the Board's order. They do not, however, resolve the issue that the rule requires the Board to resolve.

psychologist first noted that plaintiff's last disciplinary citation came in 1990, for having THC in his system. He then summarized plaintiff's description of his offenses, noting that plaintiff admitted the conduct that constituted the crimes but asserted that he acted in self-defense. Plaintiff's affect was appropriate to mildly anxious; there was no evidence of hallucinations, delusions, or other psychotic thought processes. His judgment appeared adequate, although his insight was slightly limited.

The psychologist then described the results of standardized tests, which suggested someone who had "difficulty incorporating the values and standards of society. Such individuals would tend to be rebellious toward authority figures and often in conflict with them." They would be somewhat impulsive, striving for immediate gratification, acting without considering the consequences, with poor judgment and considerable risk-taking. Such people tend to be insensitive toward others, with elements of hostility and aggressiveness in their makeup.

From the testing and his interview, the psychologist concluded that plaintiff had normal needs for closeness but did not anticipate positive interactions with others. "Mr. Peek tends to intermingle feelings with thinking during problem solving and decision making activities." "He tends to modulate or control emotional discharges much less than other people. He would probably call attention to himself because of the intensity with which he expresses feelings." "He has a very negative, angry attitude toward the environment." His capacity for control and tolerance for stress will usually be adequate, but a great deal of stress would have greater impact on his thinking. He tends to misinterpret his perceptions and to act inappropriately, in part because of excessive negativism and anger. The psychologist did not diagnose an Axis I (clinical disorder) condition; on Axis II (personality disorder), the diagnosis was 301.9, Mixed Personality Disorder with Antisocial and Narcissistic Features. The psychologist concluded that "[o]ver the past five years, [plaintiff] seems to have made determined efforts to rehabilitate himself. However, in my clinical judgment, I should still consider him to be a danger to the community." The danger

would be lessened if he were to complete violence prevention and intensive substance abuse programs.

Determining whether the psychologist's diagnosis satisfies the standard of the statute and the rule is not a simple task. As we suggested in *Weidner*, the statute creates a legal, not a medical standard, so applying a medical diagnosis to that legal standard necessarily requires some translation from one system to the other. The legal determination is whether a "prisoner's emotional disorder was (a) present, (b) severe, and (c) one that made the prisoner a 'danger to the health and safety of the community.' A 'diagnosis' of a mental disorder, standing alone, will not always provide the necessary information * * *." 154 Or App at 18. In his diagnosis, the psychologist relied on the fourth edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM-IV).[8] As we noted in *Weidner*, the DSM-IV emphasizes that a clinical diagnosis of a mental disorder is not sufficient to establish that an individual's condition meets a particular legal standard. " '[T]he fact that an individual's presentation meets the criteria for *a DSM-IV diagnosis does not carry any necessary implication regarding the individual's degree of control over the behaviors that may be associated with the disorder*.' " 154 Or App at 19 (quoting DSM-IV) (emphasis in *Weidner*). That is, a diagnosis does not in itself necessarily indicate whether the condition is severe or whether it is the condition that creates whatever danger the person presents.

Under DSM-IV, 301.9, Personality Disorder Not Otherwise Specified, is a diagnosis of

> "disorders of personality functioning that do not meet criteria for any specific Personality Disorder. An example is the presence of features of more than one specific Personality Disorder that do not meet the full criteria for any one Personality Disorder ('mixed personality'), but that

---

[8] Plaintiff argues that the diagnosis must be based on DSM-III, a predecessor to DSM-IV, because that was the version that existed when the legislature adopted ORS 144.125(3). However, as we indicated in *Weidner*, the legislature did not adopt the medical terminology and thought of a particular period but, rather, created a legal standard. Whether a medical diagnosis satisfies that legal standard does not depend on whether the diagnosis uses the terminology that was current when the legislature created the standard.

together cause clinically significant distress or impairment in one or more important areas of functioning (e.g., social or occupational)."

The psychologist diagnosed a personality disorder that has both narcissistic and antisocial features. DSM-IV points out that many highly successful individuals display narcissistic personality traits. Only when the traits are inflexible, maladaptive, and persisting and cause significant impairment or distress would they constitute Narcissistic Personality Disorder. DSM-IV at 661. Similarly, it points out that one must distinguish Antisocial Personality Disorder from criminal behavior that is not accompanied by personality features that are characteristic of the disorder. Again, only when the traits are inflexible or otherwise significantly problematic do they constitute a disorder. DSM-IV at 649.

Reading the psychological evaluation as a whole, thus, there appear to be questions whether the diagnosis is of a severe disorder and whether the disorder causes plaintiff to be dangerous. The evaluation could permit the Board to find that the diagnosis satisfies those conditions, but that conclusion is by no means compelled. It is, thus, something that the trial court on remand should permit the Board to consider. We therefore reverse and remand to permit it to give the Board that opportunity.

Reversed and remanded with instructions to direct petitioner's release unless the Board, applying OAR 255-60-006 (1988), determines to extend petitioner's parole release date.

**WARREN, S. J.,** concurring.

I agree with the majority that the Board erred in failing to determine whether the psychological report made a finding of severe emotional disturbance. That requires a remand to the Board to make that determination. The majority's discussion of the contents of the psychological report is unnecessary to our decision to remand and is inappropriate.

**DEITS, C. J.,** dissenting.

In our decision in *Weidner v. Armenakis,* 154 Or App 12, 959 P2d 623 (1998), *withdrawn by order* July 13, 1998,

*reasoning reaffirmed and readopted in Merrill v. Johnson,* 155 Or App 295, 964 P2d 284, *rev den* 328 Or 40 (1998), we concluded, after considering the text and context of ORS 144.125(3) (1991), that it was the intent of the legislature in adopting that statute that the decision as to whether a plaintiff suffers from a severe emotional disturbance such as to present a danger to the health and safety of the community ultimately is a legal determination to be made by the Board. *Weidner,* 154 Or App at 19. We held that, based on the statutory language, it was apparent that the legislature intended the Board's decision to be based on its own assessment of the psychiatric or psychological diagnosis, as well as other information in the record before the Board. We explained:

"It is apparent from the text and context of ORS 144.125 (1991) that the determination as to whether a prisoner suffers from a severe emotional disturbance such as to constitute a danger to the health and safety of the community *is a judgment that the legislature intended the Board to make.* Although a psychiatric or psychological diagnosis is a prerequisite to the Board's consideration of whether the statutory criteria have been met, that *diagnosis alone does not dictate the result.* ORS 144.125(3) (1991) allows the Board to consider both a psychiatric or psychological diagnosis and other pertinent evidence in the record in exercising its judgment as to whether the prisoner's release should be deferred." 154 Or App at 19-20 (emphasis added).

The text and context of the statute have not changed and, presumably, the legislature's intent has not changed. Nonetheless, the majority holds that our reading of the statute must now be changed because the Board adopted a rule that the majority believes demonstrates that, at least at one time, the Board read the statute differently than we did in *Weidner.* Even if the majority were right that the Board's rule demonstrates that the Board did read the statute differently than we did, I fail to understand why that requires this court to change our legal conclusion as to the meaning of the statute. In any event, as I will explain, the Board's rule does not reflect a different understanding of the statutory requirements on the part of Board.

The majority concludes that the Board has authority to adopt rules applicable to parole and that, once it does so, it

must follow its own rules. Consequently, the majority reasons, if the Board decided that it could only defer a prisoner's release if it had before it a psychiatric or psychological report that includes a finding that the prisoner suffers from a severe emotional disturbance such as to constitute a danger to the health and safety of the community, then this court is precluded from holding that the statute requires the Board to make this legal determination based on the diagnosis *and* other information available to it. I do not agree that the Board's adoption of a rule precludes this court from interpreting the statute in a manner that the court believes is legally correct.

Further, I do not think that the above point can be answered by the argument that, in adopting the rule, the Board was simply delegating the authority that it had been given by the legislature. In my view, such a delegation would be inconsistent with the specific legislative direction to the Board to make this determination. As a general rule, "delegated power cannot be delegated." *Voth v. Fisher*, 241 Or 590, 595, 407 P2d 848 (1965).

By stating that an agency may " 'limit its own discretion in its regulations,' " the majority essentially concludes that the Board may delegate the responsibility to make parole release decisions to psychologists and psychiatrists 160 Or App at 265 (quoting *Wyers v. Dressler*, 42 Or App 799, 807, 601 P2d 1268 (1979), *overruled on other grounds by Mendieta v. Division of State Lands*, 148 Or App 586, 941 P2d 582 (1997), *rev dismissed* 328 Or 331 (1999)). However, I do not believe that it follows from *Wyers,* or any other case, that an agency may abdicate its authority and turn its decisionmaking functions over to others. In *Hillman v. North. Wasco Co. PUD*, 213 Or 264, 284, 323 P2d 664 (1958), *overruled on other grounds by Maulding v. Clackamas Co.*, 278 Or 359, 563 P2d 731 (1977), the agency in question had discretion to adopt standards set forth in a national electric safety code. It did not, however, have the ability to adopt prospective future versions of the national code "without hearing or further consideration subsequent changes, modifications or alterations in such code[.]" *Id.* That was because the agency had a "duty to determine after due consideration whether the changes, modifications, or alterations in the [national] code * * * are

necessary and proper for the protection of the health and safety of the citizens of this state. The prohibition against delegation of power imposed on the legislature by the constitution applies with equal, if not greater, force to an administrative agency created by the legislature." *Id.* at 285. In *Hillman*, the court declared void the agency order in which it attempted "abdication of [its] legislative power[.]" *Id.* at 285-86. Similarly here, the Parole Board may not abdicate its duty to apply the legal standard articulated in the statute and determine whether an inmate suffers from a severe emotional disturbance such as to constitute a danger to the health or safety of the community to psychiatrists and psychologists.

Even if I am mistaken and the Board did have the authority to adopt the rule as the majority reads it, it makes no difference because, as I will discuss, the majority's reading of the rule is wrong. The rule in question, OAR 255-60-006 (1988) provides, in part:

"(7) The Board may order a psychiatric/psychological *report* anytime prior to release. If the *record* indicates that a psychiatric or psychological condition of severe emotional disturbance, such as to constitute a danger to the health or safety of the community, is present, the Board may consider deferring parole release until a specified future date.

"(8) If the *evaluation* does not make a finding of severe emotional disturbance such as to constitute a danger to the health or safety of the community, the Board shall affirm the parole release date and set parole conditions." (Emphasis added.)

The majority construes OAR 255-60-006(8) as meaning that the psychiatric/psychological *report* mentioned in OAR 255-60-006(7) must itself include " 'a finding of severe emotional disturbance such as to constitute a danger to the health or safety of the community.' " 160 Or App at 264. With all due respect, that is not what the language of the rule provides. First, the majority makes the assumption that the terms "report" and "record" in section 7 are synonymous. It seems unlikely, however, that the Board would have used two quite different terms in the same subsection to describe exactly the same thing.

Further, the majority assumes, without any discussion, that the "evaluation" mentioned in section 8 of the rule is the "psychiatric/psychological report" mentioned in section (7). From that assumption, the majority concludes that the "psychiatric/psychological report" mentioned in section (7) must itself include a "finding of severe emotional disturbance such as to constitute a danger to the health and safety of the community" as mentioned in section (8).

In my opinion, the majority's assumption that the "evaluation" referred to in section (8) is the same as the report referred to in section (7) is wrong. It is clear from the text of the rule that the "evaluation" mentioned in section (8) is *not* a synonym for the "psychiatric/psychological report" mentioned in the first sentence of section (7). To assume that the report referenced in section (7) is synonymous to the evaluation mentioned in section (8) renders the entire second sentence of section (7) meaningless:

> "If the *record* indicates that a psychiatric or psychological condition of severe emotional disturbance, such as to constitute a danger to the health or safety of the community, is present, the Board may consider deferring parole release until a specified future date." (Emphasis added.)

Consistent with *Weidner*, the above sentence indicates that the determination of whether an inmate suffers from a severe emotional disturbance such as to constitute a danger to the health or safety of the community is a determination to be made by the *Board*, based on what is in the *record*. Section (8) of the rule, when viewed in the context of that sentence — which immediately precedes it — refers to the Board's *own* evaluation of the record.

For the above reasons, I would hold that the rule, as does the statute, requires the Board itself to evaluate the record to determine if the inmate has a present severe emotional disturbance such as to constitute a danger to the health or safety of the community. We should not construe the rule in a manner that renders part of it meaningless, as the majority does. Rather, in my opinion, we should interpret the rule to give effect to all parts of the rule and we should construe it in a manner consistent with ORS 144.125(3) (1991), as we interpreted it in *Weidner*.

Finally, even assuming that the majority correctly interprets the rule and that the Board has authority to adopt a rule that abdicates its decisionmaking functions, I question the majority's disposition based on the record in this case. The majority remands to the Board for it to make the "legal determination" as to whether "a prisoner's emotional disorder was (a) present, (b) severe, and (c) one that made the prisoner a 'danger to the health and safety of the community.' " However, under the rule, as interpreted by the majority, that is a finding that must be in the report itself. It seems to me that, under the majority's reading of the rule, all that the Board may do on remand is determine if the report includes such a finding. If it does, the Board may defer the prisoner's release. If it does not, the Board must release the prisoner. If, as the majority holds, the determination that an inmate suffers from a severe emotional disturbance such as to constitute a danger to the community may be delegated to a psychologist or psychiatrist, there is no legal determination remaining for the Board to undertake. For all of the above reasons, I respectfully dissent.

Edmonds, Landau, and Brewer, JJ., join in this dissent.