Argued and submitted April 18, affirmed May 23, 2001

MIKE DAVIS,
*Appellant,*

*v.*

Robert LAMPERT,
Superintendent,
Snake River Correctional Institution,
*Respondent.*

99-06-30615M; A108266

25 P3d 408

Steven M. Stoddard filed the brief for appellant.

Lore Bensel, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

BREWER, J.

**BREWER, J.**

■ ■    Plaintiff appeals from a judgment dismissing his petition for a writ of habeas corpus. Plaintiff claims that he is entitled to immediate release from imprisonment because the Board of Parole and Post-Prison Supervision (Board) improperly deferred his release date. Plaintiff also contends, relying on *Alexander v. Johnson*, 164 Or App 235, 990 P2d 929 (1999), that the trial court erred in requiring him to pay for his attorney fees in this proceeding. We review the judgment of dismissal for errors of law, *Shelton v. Armenakis*, 146 Or App 521, 524, 934 P2d 512 (1997). We also review the decision to impose attorney fees for errors of law, because plaintiff challenges the statutory authority for the award. We affirm.

In 1990, plaintiff was convicted of first-degree rape for a crime committed in September 1989. He was sentenced to 20 years' imprisonment under the pre-guidelines system. Plaintiff was initially released on parole in 1998. In releasing plaintiff, the Board found that he had a present severe emotional disturbance that was not so severe that plaintiff posed a danger to the community. In late 1998, plaintiff was arrested for a parole violation after he exposed himself to a woman on a city street. In February 1999, plaintiff underwent a psychological evaluation by Dr. Templeman, who diagnosed plaintiff as having an anti-social personality disorder, which is characterized by a pervasive pattern of disregard for, and violation of, the rights of others. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 645 (4th ed 1994) (DSM-IV). Templeman's report contained the following conclusions and recommendations:

> "[Plaintiff] is a sex offender with a history of voyeurism, rape, child sex abuse, and now exhibitionism. While the recent exposure incident is not in itself a violent crime, its occurrence within the first year of parole suggests that [plaintiff] was repeating an offender cycle which in the past has led to violent crime. [Plaintiff's] unwillingness to acknowledge the incident for what it was also does not bode well for his prognosis, as it suggests he is still not being honest about his sexual arousal, or habits. His use of drugs

and alcohol on parole also places him at risk for further offending, especially the disinhibiting types of drugs he prefers. In my opinion the recent incident involves a relapse in his sex offender prevention plan and requires additional treatment before he resumes parole."

Following a future disposition hearing in April 1999, the Board imposed a 180-day sanction for the violation and set a release date of May 2, 1999. The Board also reviewed Templeman's report and considered whether plaintiff had a present severe emotional disturbance and whether to defer his release date. In an action form dated April 29, 1999, the Board found:

"THE BOARD, BASED ON ALL THE INFORMATION IT IS CONSIDERING AT THIS HEARING FINDS THAT THE DOCTOR'S DIAGNOSIS COUPLED WITH ALL THE INFORMATION IT IS CONSIDERING, DOES RESULT IN A FINDING OF A PRESENT SEVERE EMOTIONAL DISTURBANCE SUCH AS TO CONSTITUTE A DANGER TO THE HEALTH AND SAFETY OF THE COMMUNITY. THE BOARD HAS CONSIDERED THIS MATTER UNDER THE LAWS IN EFFECT AT THE TIME OF THE COMMITMENT OFFENSE(S)."

As a result of its findings, the Board deferred plaintiff's release date for 24 months, until May 2, 2001.

On April 28, the day before the future disposition hearing, this court issued its decision in *Peek v. Thompson*, 160 Or App 260, 980 P2d 178 (1999). In *Peek*, we held that OAR 255-60-006 (1988), the Board rule in effect at the time the plaintiff committed his crime of conviction, required a formal psychiatric or psychological finding that a prisoner suffered from a severe emotional disturbance that would endanger the community before the Board could extend the prisoner's release date. *Id.* at 269. We also held that the rule restricted the information the Board could consider in making a deferral decision to that contained within the four corners of the evaluation. *Id.* at 265 n 4. We concluded that the rule permitted the Board to consider evidence beyond the evaluation only in deciding the ultimate issue of whether to release the prisoner. *Id.* at 264-69.

On June 22, plaintiff filed a petition for a writ of habeas corpus, in which he alleged that he was entitled to immediate release. On August 31, 1999, the Board reconsidered its decision *sua sponte*. On reconsideration, the Board found:

"The Board has reviewed this file administratively in light of the 'Peek' decision. The Board finds that the psychological evaluation does constitute a finding that the offender has a present severe emotional disturbance such as to constitute a danger to the health or safety of the community. This determination is based solely on the psychological evaluation. In light of this determination, and after considering the psychological evaluation and all of the other evidence in the record, the Board determines that parole release should be deferred 24 months."

On September 22, defendant moved to dismiss the petition and, after a hearing, the court granted the motion. At the conclusion of the hearing, the court considered whether to require plaintiff to repay his court-appointed attorney fees. Plaintiff objected to the imposition of attorney fees. The court overruled plaintiff's objection and ordered him to pay attorney fees in the amount of $525.

■     In his first assignment of error, plaintiff asserts that the Board erred in dismissing his petition. Plaintiff begins with a proposition that defendant does not dispute, namely, that the Board's April 29 decision to defer his release was erroneous, because the Board did not determine whether Templeman's report *alone* made a finding that plaintiff had a present severe emotional disturbance that would endanger the community. Because the Board relied on evidence beyond the psychological report in reaching its initial decision, we agree with plaintiff that the decision was erroneous. *See Peek*, 160 Or App at 265-66. In view of that error, plaintiff makes two arguments in support of reversal.

■     First, plaintiff argues that the Board's reconsideration of its initial decision in light of *Peek* was ineffective because it was "selfserving and comes after the fact." That argument is puzzling, because it overlooks the very remedy that we provided in *Peek*. There, after determining that the

Board had failed to follow its rule, we remanded the erroneous deferral order to the Board for reconsideration in light of the standard just announced. *Id.* at 269. Were it not for the Board's decision on reconsideration, we would do the same here. In effect, plaintiff asks us to vacate the Board's decision because it had the foresight to anticipate a remand of its order and, thus, reconsidered its own decision *sua sponte*. We decline to indulge in such a pointless exercise.

■■ Plaintiff next argues that Templeman's evaluation does not meet the standard for deferral of release set forth in OAR 255-60-006 (1988). Plaintiff notes that, among other comments, the report stated that "his [Minnesota Multiphasic Personality Inventory] profile Code was much less anti-social than that obtained six years ago."[1] Implicit in plaintiff's argument is the assumption that the evaluator was required to issue findings in the language of the Board's rule and of ORS 144.125(3), which refer to a "present severe emotional disturbance" that constitutes "a danger to the health or safety of the community." That assumption previously has been discredited. A psychiatrist's or psychologist's report need not recite the precise words of the statute or rule in order to satisfy their findings requirements. *See Weidner v. Armenakis*, 154 Or App 12, 17, 959 P2d 623 (1998), *withdrawn by order* July 17, 1998, *reasoning reaffirmed and readopted in Merrill v. Johnson*, 155 Or App 295, 964 P2d 284, *rev den* 328 Or 40 (1998) (so holding with respect to the words "severe emotional disturbance"); *Peek*, 160 Or App at 266, 269 (reading a psychologist's report "as a whole," the Board could find that the inmate had a present severe emotional disturbance). The expert's report must satisfy the legal standard engrafted into the statute and rule but need not use its particular words.

[1] Plaintiff also points out that, when it released him on parole in 1997, the Board found, based on a 1997 psychological evaluation, that any emotional disturbance he had was not severe enough to constitute a danger to the community. For two reasons, that fact is entitled to little weight. First, the Board's 1999 decision was not controlled by its 1997 findings; second, plaintiff reoffended *after* the 1997 release decision was made. That conduct obviously could not have been considered in the 1997 release decision, but insofar as information about that conduct was contained in the psychological report, it significantly informed the Board's 1999 decision to defer plaintiff's release.

■ The decisive question is whether the psychologist's report furnished "some evidence" to support the Board's decision. *Hamel v. Johnson*, 173 Or App 448, 456, 25 P3d 314 (2001) (adopting "some evidence" standard for habeas corpus review of Board decisions made under ORS 144.125(3) (1991)). We conclude that it did. The report showed that, after he was released on parole in 1997, plaintiff relapsed into alcohol and drug abuse and was arrested for exposing himself to a woman on a city street. The psychologist diagnosed plaintiff with an anti-social personality disorder. That disorder is earmarked by pervasive disregard and violation of the rights of others. *See* DSM-IV at 645. The psychologist also diagnosed plaintiff as having a mixed sexual paraphilia, including exhibitionism and voyeurism, with alcohol and polysubstance dependence in remission. Paraphilia involves activity that leads to clinically significant stress or impairment, including, for example, the participation of nonconsenting individuals. *Id.* at 525. According to the psychologist, plaintiff's use of "disinhibiting" drugs "places him at risk for further offending," and the incident in which he exposed himself "requires additional treatment before he resumes parole." Given that information, we conclude that some evidence provided by the psychological evaluation supports the Board's determination that plaintiff suffers from a "present severe emotional disturbance" that constitutes a "danger to the health or safety of the community." ORS 144.125(3) (1991); OAR 255-60-006 (1988); *see Hamel*, 173 Or App at 456.

■ We turn briefly to plaintiff's objection to the trial court's imposition of attorney fees. Plaintiff argues only that this court "recently determined that to order the payment of fees under these circumstances is error." Plaintiff cites *Peterson v. Cook*, 164 Or App 240, 990 P2d 931 (1999), and *Alexander* in support of that proposition. In those decisions, involving habeas corpus and post-conviction proceedings, respectively, we held that ORS 151.505[2] does not authorize

---

[2] ORS 151.505 provides, in part:

"(1) At the conclusion of a case or matter in which the first accusatory instrument or petition in the trial court was filed after January 1, 1998, and in which the court appointed counsel to represent a person, a trial or appellate court may include in its judgment an order that the person repay in full or in

an assessment of attorney fees against a plaintiff or petitioner who initiated an action before January 1, 1998, the statute's effective date. Because plaintiff initiated this proceeding in June 1999, those cases are inapplicable here. *See Reed v. Johnson*, 170 Or App 767, 770, 13 P3d 1054 (2000) (ORS 151.505 authorizes attorney fee assessments in habeas corpus proceedings initiated after January 1, 1998). Because ORS 151.505 authorized the assessment of attorney fees in this proceeding, the trial court did not err in the respect asserted by plaintiff.

Affirmed.

---

part the administrative costs of determining the eligibility of the person for appointed counsel and the costs of the legal and other services that are related to the provision of appointed counsel.

"* * * * *

"(4) The court may not order a person to pay costs under this section unless the person is or may be able to pay the costs. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the person and the nature of the burden that payment of costs will impose. The determination of the ability of a person to pay costs and the amount of costs to be paid shall be subject to the guidelines and procedures issued by the State Court Administrator under ORS 151.487."