Argued and submitted October 31, 2013, affirmed July 8, petition for review denied October 9, 2015 (358 Or 70)

CAREY DAVID EDWARDS,
*Petitioner,*

*v.*

BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A147268

355 P3d 166

Kyle Krohn, Deputy Public Defender, argued the cause for petitioner. On the brief were Peter Gartlan, Chief Defender, and Jonah Morningstar, Deputy Public Defender, Office of Public Defense Services.

Gregory A. Rios, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Ryan Kahn, Assistant Attorney General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

Petitioner seeks review of a Board of Parole and Post-Prison Supervision order that deferred petitioner's parole release date from December 2009 to December 2011. He assigns error to the board's decision to defer his release date, which was based on its finding that petitioner had a "present severe emotional disturbance" (PSED). Petitioner contends that the board could make that finding only if the psychological report evaluating petitioner formally diagnosed petitioner as having a PSED. Consequently, he argues that, because the psychological report explicitly stated that he did not have a PSED, the board could not defer his release date. We disagree and, for the reasons explained below, affirm the board's order.

Petitioner committed murder during a drug transaction in March 1989. He was sentenced to life in prison with the possibility of parole after a 20-year minimum term of incarceration and assigned a release date of December 26, 2009. Petitioner was sentenced under the "matrix" system, which required the board to assign petitioner an initial parole release date within a specified time of being admitted to an Oregon correctional institution. *See* ORS 144.120(1) (1989), *amended by* Or Laws 1991, ch 126, § 6. Under ORS 144.125(3) (1989), *amended by* Or Laws 1993, ch 334, § 1, the board was allowed to modify that release date "if a psychiatric or psychological diagnosis of [PSED]" was made.[1] At the time that defendant committed his crime, the board had adopted OAR 255-60-006 (1988), which provided that the board could defer an inmate's release date by up to 24 months if the inmate had a PSED. As part of that process, the board could order that a psychologist examine the inmate and document the psychologist's findings regarding the inmate. *See* OAR 255-60-006 (1988).

---

[1] To determine an inmate's release date, the board applies the substantive law that existed at the time that the inmate committed the crime. *See Williams v. Board of Parole*, 112 Or App 108, 828 P2d 465, *rev dismissed*, 313 Or 300 (1992) (holding that applying current substantive law would violate the *ex post facto* clauses of the Oregon and federal constitutions if doing so leads to an increased term of incarceration).

In anticipation of petitioner's 2009 parole-consideration hearing, the board ordered that a psychologist examine petitioner. The psychologist's report states:

"[Petitioner] does not suffer from a severe emotional disturbance such as to constitute a danger to the community. Diagnosis would be Antisocial Personality, and, by history, Alcohol and Polysubstance Dependence.

"* * * [Petitioner's] record is clearly one of a very habitual criminal, some of his criminal history seemingly quite professional in the sense of being [a] planned-out, daily lifestyle, somewhat analogous to that by which most of us go to our jobs. Given the depth of that history, there would be concern that he would return to illegal activity, most likely [of] a larcenist or drug[-]trafficking nature, and any potential for violence would probably be ancillary to that lifestyle. Such danger would be considered significant, although not nearly as acute as that for an inmate with a more habitually aggressive arrest record, or a record of volatility within the institution. He has kept control of himself during this incarceration, and one would expect the same to continue, albeit to potentially [be] jeopardized, should he return to other criminal activity."

On the basis of that report, the board determined that "the psychological evaluation does constitute a finding that the offender has a present severe emotional disturbance such as to constitute a danger to the health or safety of the community" and deferred for 24 months petitioner's release on parole.

Petitioner sought administrative review of the board's decision, arguing, among other things, that the board had erred "when [it] fail[ed] to follow the recommendation of [the psychologist] for 'Release' when he clearly states that the petitioner 'does not suffer from a severe emotional disturbance such as to constitute a danger to the community.'" The board denied petitioner's request for review on the grounds that petitioner's arguments "are not supported by the factual record, * * * are without merit, or some combination of these factors." Petitioner, having exhausted his administrative remedies, now seeks judicial review.

Petitioner renews his argument that "the board could defer an inmate's release only if the inmate's psychological * * * report contained a formal [PSED] diagnosis." To make that argument, petitioner relies on OAR 255-60-006 (1988), which provides, as relevant:

"(1)   At any time prior to a prisoner's scheduled parole release date, the Board may conduct a parole release hearing to review the prisoner's parole plan, psychiatric/psychological reports, if any * * *.

"* * * * *

"(7)   The Board may order a psychiatric/psychological report anytime prior to the release. If the record indicates that a psychiatric or psychological condition of severe emotional disturbance, such as to constitute a danger to the health or safety of the community, is present, the Board may consider deferring parole release until a specified future date.

"(8)   If the evaluation does not make a finding of severe emotional disturbance such as to constitute a danger to the health or safety of the community, the Board shall affirm the parole release date and set parole conditions."

Petitioner argues that we held in *Peek v. Thompson*, 160 Or App 260, 980 P2d 178, *rev dismissed*, 329 Or 553 (1999), that that regulation laid out a two-step process. First, he posits, the report must contain a "formal finding" of PSED, OAR 255-60-006(8) (1988), and, only then, can the board consider deferring petitioner's release date under OAR 255-60-006(7) (1988). Consequently, petitioner argues, the board did not have the authority to defer his release date because the psychological report concluded that he did not have a PSED.

The board offers a different reading of OAR 255-60-006 (1988) and *Peek*. The board contends that we held in *Peek* that, before determining whether it will defer an inmate's release date under OAR 255-60-006 (1988), *the board* must determine whether "the psychologist's report supports the board's finding of PSED." Therefore, the board's argument continues, when reviewing the board's determination that a petitioner had a PSED, the reviewing court's task is to determine whether there was substantial evidence to

support the board's conclusion, not whether the psychologist made a formal finding of PSED. In support of that reading of OAR 255-60-006 (1988) and *Peek*, the board notes that we stated in *Gordon v. Board of Parole*, 246 Or App 600, 610, 267 P3d 188 (2011), *rev den*, 352 Or 341 (2012), that PSED is a legal rather than a medical term. If that is the case, it argues, then it logically follows that the board, rather than a psychologist, is in the best position to determine whether the psychologist's report supports a finding of PSED.

Given the parties' disagreement about how OAR 255-60-006 (1988) works, we begin with an overview of our case law interpreting that rule and other relevant statutes. Ironically, our discussion of that rule begins with *Weidner v. Armenakis*, 154 Or App 12, 959 P2d 623, *vac'd and rem'd*, 327 Or 317 (1998), *withdrawn by order* July 17, 1998, *reasoning reaffirmed and readopted in Merrill v. Johnson*, 155 Or App 295, 964 P2d 284, *rev den*, 328 Or 40 (1998),[2] a case in which neither party mentioned OAR 255-60-006 (1988).

In *Weidner*, the petitioner appealed the board's decision to defer his release date, which was based on a determination that he had a PSED. The petitioner argued, among other things, that the board had erred because the psychologist's report did not diagnose him as having a PSED and, consequently, the board could not defer his release date under ORS 144.125(3) (1993). *Weidner*, 154 Or App at 19. The petitioner failed to make any argument under OAR 255-60-006 (1988). We rejected the petitioner's argument and held that

"the determination as to whether a prisoner suffers from a [PSED] such as to constitute a danger to the health and safety of the community is a judgment that the legislature intended the Board to make. Although a psychiatric or psychological diagnosis is a prerequisite to the Board's consideration of whether the statutory criteria have been met, that diagnosis alone does not dictate the result. ORS 144.125(3) (1991) allows the Board to consider both a psychiatric or psychological diagnosis and other pertinent evidence in the

---

[2] Although we withdrew our opinion in *Weidner* after we learned that the case had become moot, for convenience, we will refer to it in this opinion, although technically *Merrill* is the precedential case.

record in exercising its judgment as to whether the prisoner's release should be deferred."

*Id.* at 19-20. That passage states that, although the psychological report must contain a diagnosis of some emotional disorder, it is the board that determines whether an inmate has a PSED.

We were presented with a similar series of questions in *Peek*, another case in which the petitioner appealed the board's decision to defer his release date on the ground that he had a PSED. In that case, the psychologist had diagnosed the petitioner with "Mixed Personality Disorder with Antisocial and Narcissistic Features" and concluded that the petitioner was still a danger to the community. *Peek*, 160 Or App at 267. Nothing in *Peek* suggests that the psychologist's report contained a formal finding that the petitioner had a PSED. The board proceeded to defer the petitioner's release date, finding that—based on all the information before it and not just the psychologist's report—petitioner had a PSED. On appeal, the petitioner made the same argument as had the petitioner in *Weidner*, with one important difference: Instead of relying on ORS 144.125(3) (1993), the petitioner in *Peek* relied on OAR 255-60-006(8) (1988).

In *Peek*, we began by addressing whether the board was required to determine whether the psychologist had diagnosed the petitioner with PSED and what information it could consider in coming to that conclusion. 160 Or App at 264-66. After noting that the dissent in *Weidner* had argued that the board was required to look only to the psychological report to determine whether it had the authority to extend the release date, we concluded that OAR 255-60-006(8) had adopted precisely that approach—*viz.*, that the regulation limited the documents that the board could consider when deciding whether an inmate has a PSED. *Id.* at 266 n 7.

Next, we addressed "whether the psychologist's report would permit the board" to conclude that the petitioner had a PSED. *Id.* at 266. We reiterated that PSED is a legal rather than a medical standard that "necessarily requires some translation from one system to another." *Id.* at 268. We clarified that the board could conclude that the petitioner

had a PSED if he had an "'emotional disorder [that] was (a) present, (b) severe, and (c) one that made the prisoner a "danger to the health and safety of the community."'" *Id.* (quoting *Weidner*, 154 Or App at 18). Furthermore, we noted that a "'diagnosis' of a mental disorder, standing alone, will not always provide the necessary information" to conclude that an inmate has a PSED. *Id.* After concluding that it was unclear whether the petitioner's disorder was severe and caused the petitioner to be dangerous, we remanded the case back to the board to make precisely those determinations. *Id.* at 269 ("The evaluation could permit the Board to find that the diagnosis satisfies those conditions, but that conclusion is by no means compelled. It is, thus, something that the trial court on remand should permit the Board to consider.").

*Peek* stands for the proposition that, for the board to defer a petitioner's release date, the psychologist's report must diagnose the petitioner with a mental disorder. Once the psychologist has made the diagnosis, the board must, considering the psychologist's report in its totality, resolve whether the petitioner's emotional disorder is a PSED. Our decision in *Peek* to give the board an opportunity to determine whether the petitioner's personality disorder was a PSED makes little sense unless it is for the board to make that determination. That understanding is also consistent with our post-*Peek* case law. For example, in *Davis v. Lampert*, 174 Or App 383, 388, 25 P3d 408 (2001), *rev den*, 333 Or 260 (2002), the petitioner challenged a board order deferring his release date on the ground that "the evaluator was required to issue findings in the language of the Board's rule and of ORS 144.125(3), which refer to a 'present severe emotion disturbance' that constitutes a 'danger to the health or safety of the community.'" We rejected that argument and concluded that it "has been discredited." *Id.* Thus, we reject petitioner's argument that, for the board to defer his release date, the psychologist's report had to contain a formal finding that he had a PSED.

However, we acknowledge that petitioner's proposed reading of *Peek* is not entirely unpersuasive. For example, in support of his argument that the psychological evaluation

must contain a formal finding that he had a PSED, petitioner underscores the importance of the following passage:

> "So long as [OAR 255-60-006 (1988)] was in effect, it required the Board to treat the statute as requiring a formal finding in the psychiatric or psychological evaluation as a prerequisite to the Board's authority to extend a prisoner's parole release date."

*Peek*, 160 Or App at 265. The problem with petitioner's reliance on that statement is that the "formal finding" that we required in *Peek* was not a diagnosis of a PSED but of some emotional disorder. As we have stated in subsequent opinions applying *Peek*'s analytical framework, the psychologist's report need not contain a formal diagnosis of a PSED. *See Gordon*, 246 Or App at 610 ("It is not necessary that the psychological report contain the phrase 'severe emotional disturbance.'"); *see also Davis*, 174 Or App at 388 (stating that no "precise words" are required because the report "must satisfy the legal standard engrafted into the statute and rule but need not use its particular words"). Rather, for the board to find that a person has a PSED, the psychological report must contain the diagnosis of an emotional disorder.

As we have previously stated, "there are four elements composing the board's determination of a [PSED]: (1) an emotional disorder that is (2) present, (3) severe, and (4) one that made petitioner 'a danger to the health and safety of the community.'" *Gordon*, 246 Or App at 612 (internal quotation marks omitted). We examine the psychological evaluation as a whole to determine whether substantial evidence supports the board's order finding that petitioner has a PSED. *Id.* at 611. "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c).

Here, there is substantial evidence to support the board's finding that petitioner had (1) an emotional disorder that is (2) present, (3) severe, and (4) one that made him a danger to the health and safety of the community in this case. The report formally diagnosed petitioner as having an antisocial personality disorder, which would allow a reasonable person to make the finding that petitioner had a

present emotional disorder. Further, the report characterized petitioner's criminal history as that

> "of a very habitual criminal, [with] some of his criminal history seemingly quite professional in the sense of being [a] planned-out, daily lifestyle, somewhat analogous to that by which most of us go to our jobs. Given the depth of that history, there would be concern that he would return to illegal activity, most likely [of] a larcenist or drug[-]trafficking nature, and any potential for violence would probably be ancillary to that lifestyle."

Finally, the report concluded that there was a "significant" danger that petitioner would commit future violent acts if he reverted to criminal activity after his release from prison.[3]

It is true that the psychologist concluded that petitioner did not have a PSED but, given the standard of review, that did not preclude the board from arriving at a different conclusion, as long as a reasonable person could have arrived at the board's conclusion. Here, the report would allow a reasonable person to conclude that there was a significant risk that petitioner would revert to a criminal lifestyle on his release and, in turn, that there was a significant risk that he would commit violent acts if he did that. Hence, the report constitutes substantial evidence that supports the board's conclusion that petitioner had a PSED.

In sum, we conclude that the board could defer petitioner's release date even if the psychological report did not contain a formal diagnosis of a PSED and that there was substantial evidence in the report to sustain the board's finding that petitioner had a PSED.

Affirmed.

---

[3] The report noted that the danger was

"not nearly as acute as that for an inmate with a more habitually aggressive arrest record, or a record of volatility within the institution. He has kept control of himself during his incarceration, and one would expect the same to continue, ableit to potentially [be] jeopardized, should he return to other criminal activity."

In other words, although the danger that petitioner would commit future violent acts was lessened by aspects of his behavioral history, the report nonetheless characterized the danger to be a significant danger.