SCHUMAN, S. J.
*498 Petitioner shot and killed a man in 1988 and was charged with aggravated murder, murder, and robbery. Pursuant to an agreement, he pleaded guilty to murder, all of the other charges were dismissed, and he was sentenced to imprisonment for life with the possibility of parole. At that time, the Board of Parole and Post-Prison Supervision (board) set an initial proposed release date of 2009, following the recommendation of the sentencing court that petitioner serve a minimum of 20 years' incarceration. Since 2009, petitioner has appeared before the board four times to apply for release, each time without success. Petitioner now seeks judicial review of the most recent order deferring his release, contending that neither substantial evidence nor substantial reason support the board's decision. We reverse and remand.
*374 The board's authority to defer an inmate's release depends on the law in effect when the crime of conviction occurred. Edwards v. Board of Parole , 272 Or. App. 183, 184 n. 1, 355 P.3d 166, rev. den. , 358 Or. 70, 363 P.3d 501 (2015). The relevant law at the time of petitioner's crime (May 29, 1988) was OAR 255-60-006, a 1988 version of the board's administrative rule interpreting the then-existing version of ORS 144.125(3). Peek v. Thompson , 160 Or. App. 260, 262, 980 P.2d 178, rev. dismissed , 329 Or. 553, 994 P.2d 130 (1999). That rule provided:
"(7) The Board may order a psychiatric/psychological report anytime prior to release. If the record indicates that a psychiatric or psychological condition of severe emotional disturbance, such as to constitute a danger to the health or safety of the community, is present, the Board may consider deferring parole release until a specified future date.
"(8) If the evaluation does not make a finding of severe emotional disturbance such as to constitute a danger to the health or safety of the community, the Board shall affirm the parole release date and set parole conditions."
OAR 255-60-006 (1988). As construed, the rule encompassed several requirements limiting the board's discretion. First, the board had to obtain a psychiatric or psychological evaluation of the inmate that included a diagnosis that *499 the inmate had a mental disorder. Edwards , 272 Or. App. at 189, 355 P.3d 166 ; Peek , 160 Or. App. at 262, 980 P.2d 178. Second, the board had to independently evaluate the material contained in the psychological examination and reach its own legal (as opposed to medical) determination that the inmate's disorder was "(a) present, (b) severe, and (c) one that made the prisoner a 'danger to the health and safety of the community,' " although the board did not need to use any particular verbal formulation to express that conclusion. Weidner v. Armenakis , 154 Or. App. 12, 17-18, 959 P.2d 623 (1998). Third, the board's independent determination had to be based on only the psychiatric or psychological evaluation and not on other information, for example, the inmate's criminal history, parole plan, institutional history, or exit interview. Peek , 160 Or. App. at 265-66, 980 P.2d 178.[1]
The board's order, in turn, is subject to judicial review for substantial evidence and substantial reason. Jenkins v. Board of Parole , 356 Or. 186, 205, 335 P.3d 828 (2014) ; Martin v. Board of Parole , 327 Or. 147, 157, 957 P.2d 1210 (1998). "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482 (8)(c). In exercising substantial evidence review, we may not reweigh or assess the credibility of the evidence. Murphy v. Board of Parole , 241 Or. App. 177, 184, 250 P.3d 13, rev. den. , 350 Or. 571, 258 P.3d 526 (2011). The "substantial reason" standard requires the board to provide an explanation connecting the adequately supported facts to the inference it draws from them. Jenkins , 356 Or. at 196, 335 P.3d 828 (citing City of Roseburg v. Roseburg City Firefighters , 292 Or. 266, 271-72, 639 P.2d 90 (1981) ). The board's burden is cumulative. For example, failure to adequately establish that the disorder is present renders the entire order erroneous. See Christenson v. Thompson , 176 Or. App. 54, 59-60, 31 P.3d 449 (2001).
*500 The issue in this case, then, is: Does the board's order contain a logical explanation of the connection between adequately supported facts and the board's conclusion that petitioner has a psychological condition that is present, severe, and makes him a danger to the health or safety of the community?
Petitioner does not dispute any of the historical facts in the psychological report prepared *375 by the board-appointed psychologist, McGuffin,[2] who based his report on an interview with petitioner and three psychological tests: the Shipley-2, which measures cognitive functioning and impairment; the Minnesota Multiphasic Personality Inventory-2 (MMPI-2), a test that, according to McGuffin, "is basically actuarial and probabilistic in nature in that the symptoms and personality characteristics presented * * * have been identified as disproportionally frequent among individuals obtaining similar scores and patterns of scores";[3] and an HCR-20 test, "a blended clinical risk assessment instrument."
McGuffin's "interview findings" consist entirely of a factual account of petitioner's family background and other biographical information, including the facts of the crime of conviction.[4]
The Shipley-2 results indicate cognitive function that, by one measure, is possibly impaired, and by another measure, is within normal limits. "Given his scores and if motivated, [petitioner] could benefit from therapy" and is *501 "capable of understanding and internalizing most * * * content if presented in a workbook fashion." Petitioner's MMPI-2 results, as analyzed by McGuffin, "suggest a pattern that tends to overly minimize problems, possibly in an effort to present in a positive image, * * * indicate emotional instability concerning hysterical control and emotional alienation, and impulsive behavior," and are similar to individuals who are
"quite sensitive to rejections and will respond with anger; in spite of an underlying anger towards authority figures, they tend to be rule conscious and will use charm [to] get what they want. They may feel trapped, bitter, resentful, and defeated which tends to bring on impulsive and self-defeating behaviors and addictions. Angry outbursts come as a buildup of internal pressure. Once anger is expressed, these individuals can return to periods of socially appropriate and controlled behavior; the outburst tends to be rationalized and even denied."
The HCR-20 test, which measures the likelihood of violent behavior and recidivism, assessed petitioner in the "Moderate category relative to the likelihood of violent recidivism." This result combined three components. On the risk management component, he scored "Low to Moderate."
Based on the interview and tests, McGuffin diagnosed petitioner as presently having "other specified personality disorder with mixed personality features including antisocial, narcissistic, and histrionic traits, considered moderate." He elaborated:
"Of concern is [petitioner's] capacity to cope effectively and in a pro-social manner when overwhelmed by deep-seated issues that could render him to exhibit poor judgment; therefore become difficult to supervise in the community. Although [petitioner] has made strides in his prosocial attitudes and behaviors, he is seen as an improbable candidate to be successfully supervised if returned to the community. He is seen as having an emotional disturbance predisposing him to the commission of any crime to a degree rendering him a danger to the health or safety of others."
Relying "solely on the psychological evaluation," the board concluded in Board Action Form (BAF) #12:
*376 *502 "The Board determines that the psychological evaluation does constitute a finding that you have a present severe emotional disturbance such as to constitute a danger to the health or safety of the community. This determination is based solely on the psychological evaluation. The Board has considered this matter under the substantive standard in effect at the time of the commitment offenses, and under all applicable rules and laws."
Petitioner sought administrative review. In an Administrative Review Response (ARR), the board rejected his claim, summarizing the psychological evaluation as follows:
"Dr. McGuffin expressed concern over the fact that you appear to experience a considerable degree of anger and rebelliousness and struggle to find ways to control or discharge it. He notes that you tend to externalize blame to others, and that you have difficulty having compassion for others and their points of view. He found that you are likely to continue to exhibit poor judgment, and believes you would be difficult to supervise in the community. Dr. McGuffin diagnosed you with Other Specified Personality Disorder with Mixed Personality Features including Antisocial, Narcissistic, and Histrionic Traits, considered moderate and noted that you suffer from an emotional disturbance that predisposes you to commission of any crime to a degree that make[s] you a danger to the health or safety of others."
Having exhausted his administrative remedies, petitioner now seeks judicial review. He challenges, among other things, the board's conclusion that his emotional disorder is severe. He maintains that the conclusion is not supported by substantial reason, that is, that the board failed to meet its burden of satisfactorily explaining the logical connection between the facts in McGuffin's evaluation and the board's conclusion regarding severity.
We agree. The board's obligation to meet its burden is complicated by the fact that the only characterization of petitioner's psychological disorder in McGuffin's evaluation is that the disorder is "moderate." The state argues that, although the relevant statute and rule require a finding of a "severe" emotional disturbance, we do not require the recitation of "magic words." Edwards , 272 Or. App. at 189, 355 P.3d 166 ("[W]e reject [the] petitioner's argument that, for the board *503 to defer his release date, the psychologist's report had to contain a formal finding that he had a PSED."). We take that to mean that the board's order need not parrot the statutory terms, but may use synonymous terms or formulations that mean the same thing. We agree. "Moderate," however, does not mean "severe." Indeed, according to at least one dictionary, "moderate" means not severe. E.g. , Merriam-Webster Dictionary , https://www.merriam-webster.com/dictionary/moderate (defining "moderate" as "not violent, severe, or intense"; listing "severe" as antonym of "moderate") (accessed Oct. 10, 2018). The board had the obligation to explain how McGuffin's characterization of petitioner's condition as moderate could be transmuted into the board's necessary conclusion that his condition was severe, and the "magic words" rubric cannot accomplish that.
The board was not obligated to accept McGuffin's characterization, although it was obligated to take it into consideration, along with all of his other findings of fact. Weidner , 154 Or. App. at 17-18, 959 P.2d 623. Those include:
• Petitioner has the capacity to act in a pro-social manner except when overwhelmed by "deep-seated issues that could render him to exhibit poor judgment" and become difficult to supervise.
• Petitioner has a "considerable degree of anger and rebelliousness" and difficulty controlling or discharging it.
• Petitioner tends to externalize blame to others.
• Petitioner lacks compassion for others.
• On one measure of cognitive functioning and impairment, petitioner's test results indicate "possible impairment"; on another measure from the same test, his "impairment index" is "within normal limits." These scores indicate that petitioner could benefit from therapy and is capable of understanding and internalizing content.
*377 • Petitioner's MMPI-2 results "suggest" that he tends to "overly minimize problems, possibly in an effort to present a positive image."
*504 • Other individuals whose MMPI-2 patterns are similar to petitioner's show emotional instability and impulsive behavior that may be "modified, controlled, inhibited, or masked by the needs for approval"; rebelliousness manifested in subtle acting out behavior and associating with "overtly non-conformist individuals"; impatience "masked by a socially appropriate veneer"; anger toward authority figures mitigated by being "rule conscious" and the use of "charm"; a tendency to have "angry outbursts that, once expressed, are followed by periods of socially appropriate and controlled behavior."
• Petitioner's overall score on the HCR-20, a risk assessment instrument, puts him in the "moderate category relative to the likelihood of violent recidivism." On a subset of the test focused on "risk management," his score was "low to moderate."
It might have been possible for the board to draw its own conclusion regarding severity based on other facts in McGuffin's evaluation. It did not do so. The portion of the ARR addressing petitioner's claim that BAF #12 was deficient in substantial reason reads, in its entirety:
"To the extent you argue the Board's decision is not supported by substantial reason, the Board has examined your claim and based on [ Jenkins , 356 Or. at 186, 335 P.3d 828 ], it rejects it. The Oregon Supreme Court in Jenkins held that while the Board's decision must be based on a [sic ] substantial reason, this standard is upheld if the Board provides some kind of explanation connecting the facts of the case and the result reached. The Court in Jenkins also held that the Court would consider both the BAF and any administrative review in determining if the Board had met its requirement."
Presumably, the "facts of the case" refer to the material in McGuffin's report, summarized above. If, as in Jenkins , the board had explained that it relied on a psychological evaluation stating that the inmate "had an antisocial personality disorder with a 'very high degree of psychopathy' and that 'the condition is a severe one,' " id. at 208, 335 P.3d 828 (emphasis added), we could conclude that our standard was met. Similarly, if *505 the board had "for each of its findings, * * * identified the particular facts and the particular criteria on which it relied in support of its conclusion," we could affirm without difficulty. Dixon v. Board of Parole & Post-Prison Supervision , 257 Or. App. 273, 287-88, 306 P.3d 716, rev. den. , 354 Or. 389, 315 P.3d 420 (2013).
Here, however, the board did not refer to any finding of severity, express or implied. Possibly the board could have, and on remand can, explain how the other facts summarized above-briefly, that petitioner could benefit from therapy, is angry, rebellious (as demonstrated by his associating with nonconformists), unable to accept blame, lacking compassion, perhaps cognitively impaired (or perhaps cognitively normal), has a tendency to impulsivity that is mitigated by a need for approval, tries to present a positive image, has impatience mitigated by a socially appropriate veneer, is rule conscious, uses charm, has angry outbursts followed by socially appropriate and controlled behavior-perhaps the board can explain how these facts lead to the conclusion that petitioner's condition, contrary to the diagnosis of the psychological examiner, is severe. It has not done so. At this point, the board's order is "an announcement, not an explanation." Castro v. Board of Parole , 232 Or. App. 75, 85, 220 P.3d 772 (2009). For that reason, we reverse and remand.
Reversed and remanded.

Release decisions outside of the period when OAR 255-60-006 (1988) was in effect (May 19, 1988 to April 5, 1990) may rely on all relevant evidence in the record. See OAR 255-060-0006 (1998). Although the deferral decision itself had to be based on solely the psychological evaluation, that limitation did not apply to the board's determination that a deferral could extend beyond two years. In the present case, the board deferred petitioner's release for four years and cited several factors in support of that decision. Petitioner does not assign error to that decision and we express no opinion regarding it.

He does, of course, dispute the inference that McGuffin draws from those facts, that is, that petitioner has a present severe emotional disturbance (PSED) that renders him a menace to society.

McGuffin adds: "[A] hypothesis in interpreting the test should not be used in isolation from other information regarding this individual. * * * In this situation, the diagnosis of this individual is based on the integration of information from personal contact, the individual's social, educational, occupational, family and criminal history, and other test results and whatever independent data are relevant and available."

Briefly, petitioner met the victim at a bar in Portland and agreed to accompany him to a party at Timberline Lodge. Before setting off for the party, petitioner and the victim stopped at the victim's house. There, under surrounding circumstances that were never adjudicated in detail, petitioner shot and killed the victim with the victim's rifle. As reported by McGuffin, petitioner claimed that the victim brandished the gun after petitioner rejected sexual advances; the two struggled for control of the gun, petitioner gained control of it, and shot the victim.