Submitted October 23, 2015, affirmed February 15, petition for review denied
June 29, 2017 (361 Or 645)

**LARRY D. BELL,**
*Petitioner,*

*v.*

**BOARD OF PAROLE AND
POST-PRISON SUPERVISION,**
*Respondent.*

Board of Parole and Post-Prison Supervision
A156320

391 P3d 907

Peter Gartlan, Chief Defender, and Erik Blumenthal, Deputy Public Defender, Office of Public Defense Services, filed the brief for petitioner.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Karla H. Ferrall, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

## GARRETT, J.

Petitioner was sentenced as a dangerous offender in 1986 based in part on the sentencing court's finding that petitioner "suffer[ed] from a severe personality disorder indicating a propensity toward criminal activity." *See* ORS 161.725 (1985), *amended by* Or Laws 1989, ch 790, § 75; Or Laws 2005, ch 463, § 9.[1] Petitioner seeks review of a final order of the Board of Parole and Post-Prison Supervision deferring parole consideration for 24 months based on the board's finding that, at the time of petitioner's 2013 parole-consideration hearing, "the condition which made [petitioner] dangerous" was not "absent or in remission." *See* ORS 144.228(1)(b) (1985), *amended by* Or Laws 1993, ch 334, § 3.[2] Petitioner and the board agree that the phrase "the condition which made the prisoner dangerous" in ORS 144.228(1)(b) (1985) refers to the sentencing court's finding that petitioner "suffer[ed] from a severe personality disorder indicating a propensity toward criminal activity." *See* ORS 161.725(1) (1985). On judicial review, however, petitioner argues that the board's order is not supported by substantial evidence because some of the "clinical impressions" documented in petitioner's psychiatric report from the time

---

[1] At the time that petitioner committed his offenses, ORS 161.725 (1985) provided, in relevant part:

"The maximum term of an indeterminate sentence of imprisonment for a dangerous offender is 30 years, if the court finds that because of the dangerousness of the defendant an extended period of confined correctional treatment or custody is required for the protection of the public and if it further finds, as provided in ORS 161.735, that one or more of the following grounds exist:

"(1) The defendant is being sentenced for a Class A felony, and the court finds that the defendant is suffering from a severe personality disorder indicating a propensity toward criminal activity."

[2] At the time that petitioner committed his offenses, ORS 144.228(1)(b) (1985) provided, in relevant part:

"At the parole consideration hearing, the prisoner shall be given a release date in accordance with the applicable range and variation permitted if the condition which made the prisoner dangerous is absent or in remission. In the event that the dangerous condition is found to be present, reviews will be conducted at least once every two years until the condition is absent or in remission, at which time release on parole shall be ordered if the prisoner is otherwise eligible under the rules."

In 1993, the legislature amended ORS 144.228(1)(b), removing from ORS 144.228(1)(b) any reference to a "condition which made the prisoner dangerous." Or Laws 1993, ch 334, § 3.

of sentencing "were no longer present" at the time of the parole-consideration hearing.

For the reasons that follow, we conclude that the board's order is supported by substantial evidence. We disagree with petitioner's contention that the board was required to limit its inquiry to the current status of the "clinical impressions" that were presented to the sentencing court. Instead, we conclude that the statute directs the board to consider whether there is evidence that petitioner continues to suffer from a mental disorder that satisfies the terms of the dangerous-offender statute. *See State v. Huntley*, 302 Or 418, 430, 730 P2d 1234 (1986) (concluding that the "severe personality disorder" finding is satisfied based on evidence "that the defendant is suffering from a severe mental or emotional disorder indicating a propensity toward continuing *dangerous* criminal activity" (emphasis in original)). The board may make such a finding even if, at the time of the parole-consideration hearing, some aspects of petitioner's condition that were documented at the time of sentencing are no longer present. Finally, the record supports such a finding in this case, and thus, the board did not err in deferring parole consideration. We reject petitioner's other assignments of error without written discussion.

We review a final order of the parole board for legal error, substantial evidence, and substantial reason. ORS 144.335(3); ORS 183.482(8); *Jenkins v. Board of Parole*, 356 Or 186, 200, 335 P3d 828 (2014).

Petitioner was convicted in 1986 of first-degree rape, first-degree sodomy, second-degree assault, and two counts of first-degree burglary. The trial court imposed dangerous-offender sentences after making the findings specified by ORS 161.725(1) (1985) (authorizing a court to impose a 30-year maximum indeterminate sentence for a Class A felony if the court finds that the defendant "is suffering from a severe personality disorder indicating a propensity toward criminal activity" and "because of the dangerousness of the defendant[,] an extended period of confined correctional treatment or custody is required for the protection of the

public").[3] In the judgment, the sentencing court stated that its findings were based upon the presentence report and a psychiatric report, along with other evidence. *See* ORS 161.735(6) (1985), *amended by* Or Laws 1987, ch 248, § 1; Or Laws 2005, ch 463, § 10 ("If, after considering the presentence report, the psychiatric report[,] and the evidence in the case or on the presentence hearing, the court finds that the defendant comes within ORS 161.725 [(1985)], the court may sentence the defendant as a dangerous offender."). The psychiatric report contained the following "clinical impression" of petitioner:

> "[Petitioner] is an unhappy, pessimistic, and troubled young man. He derives little enjoyment out of life, and has few resources to cope with day to day setbacks. He is tense, socially anxious, and has difficulty with interpersonal relationships. He feels abused by people but cannot realize the damage he inflicts upon others. He has a serious drug dependency, and no constructive social involvements. [Petitioner] has the potential for self-destructive outbursts when he feels overwhelmed. He has the potential to become psychotic, and already shows signs of difficulty concentrating, subscribes to peculiar thought content, and displays an atypical affect. His drug dependency, vulnerability to disturbed thinking, and inclination towards exciting yet reckless activity make him a potential sexually dangerous person."

The psychiatric report did not expressly state that petitioner had a "severe personality disorder indicating a propensity toward criminal activity."

Beginning in 2001, the board was required to conduct regular parole-consideration hearings to determine whether to set an initial release date for petitioner.[4] *See* ORS 144.228(1) (1985); *see generally Davis v. Board of Parole*, 341 Or 442, 446-47, 144 P3d 931 (2006) (explaining the

---

[3] The trial court imposed consecutive 30-year indeterminate sentences for petitioner's first-degree rape and first-degree sodomy convictions and a consecutive 20-year indeterminate sentence for one of the first-degree burglary convictions. Petitioner's sentences for second-degree assault and the other first-degree burglary convictions have expired.

[4] Because petitioner received a minimum determinate sentence of 15 years for one of the first-degree sodomy counts, he was not eligible for parole consideration until 2001.

parole-consideration procedures applicable to persons sentenced as dangerous offenders).[5] The board's determination is governed by the following standard:

> "At the parole consideration hearing, the prisoner shall be given a release date in accordance with the applicable range and variation permitted *if the condition which made the prisoner dangerous is absent or in remission.* In the event that the dangerous condition is found to be present, reviews will be conducted at least once every two years until the condition is absent or in remission, at which time release on parole shall be ordered if the prisoner is otherwise eligible under the rules. In no event shall the prisoner be held beyond the maximum sentence less good time credits imposed by the court."

ORS 144.228(1)(b) (1985) (emphasis added); *see also Davis,* 341 Or at 447 ("ORS 144.228(1)(b) [(1989)] provides that the board may not set a release date for a prisoner *unless* the board finds that the condition that made the prisoner dangerous is absent or in remission." (Emphasis added.)). After parole consideration hearings in each of 2001, 2003, 2005, 2007, 2009, and 2011, the board declined to set release dates for petitioner.

In preparation for petitioner's 2013 parole-consideration hearing, a psychologist conducted an evaluation of petitioner. *See* ORS 144.226(1) (2011) (providing that, within 120 days of a parole consideration hearing, a person sentenced as a dangerous offender "shall * * * be given a complete mental and psychiatric or psychological examination" and that the "examining psychiatrist or psychologist shall file a written report of findings and conclusions" with the board within 60 days of the hearing). In that report, the psychologist diagnosed petitioner with atypical paraphilia, cocaine dependence (in remission in a controlled environment), alcohol dependence (in remission in a controlled environment), and a mixed personality disorder with antisocial, paranoid, and borderline features. The report described petitioner as having a "marked

---

[5] Although *Davis* addressed the version of ORS 144.228(1) that was in effect in 1989, *see* 341 Or at 444 n 1, the text of paragraph (1) did not change in relevant part between 1985 and 1989. *Compare* ORS 144.228(1) (1985), *with* ORS 144.228(1) (1989).

history of polysubstance abuse and/or dependence" and stated that, when petitioner is "disinhibited by substance abuse, * * * acting out behaviors will become apparent." The report further stated that petitioner demonstrated emotional instability, suffered from "fairly rapid and extreme mood swings," and presented as "an individual who is easily angered, has difficulty controlling the expression of anger, and is perceived by others as having a hostile, angry temperament." Based on test results, the report also stated that petitioner presented a "moderate" to "high" risk of "future sexual violence" and "future violent behavior." The examining psychologist summarized the results of the evaluation as indicating that petitioner "is a seriously emotionally disturbed individual who would be a danger to community if he were to be released at this time."

After a hearing in February 2013, the board again deferred parole consideration for petitioner, finding that he "has a mental or emotional disturbance, deficiency, condition, or disorder predisposing [him] to the commission of any crime to a degree rendering [him] a danger to the health and safety of others; therefore, the condition which made [him] dangerous is not in remission."

Petitioner sought administrative review. In an Administrative Review Response (ARR) denying relief, the board explained that it had considered petitioner's criminal history (involving a "diverse and continuous" history of sexual assault), his psychological evaluation, his institutional history, and his presentation at the hearing in making its determination. See ORS 144.228(2) (1985) (providing that, in the case of a dangerous offender, the board "shall * * * consider all information regarding such person," including a written psychiatric report and the prisoner's institutional record). The ARR further explained that the board had also relied upon the fact that petitioner "had not taken the initiative to begin to address [his] sex-offending risk by purchasing and completing the sex offender workbook recommended to [him]," that petitioner "had not made sufficient effort to address [his] drug addiction problems," and that petitioner had not "attempt[ed]" to comply with the board's recommendation that he develop a parole plan and save money.

On review, petitioner argues that substantial evidence does not support the board's finding that "the condition which made [him] dangerous is not absent or in remission." Petitioner contends that the phrase "the condition which made the prisoner dangerous" in ORS 144.228(1)(b) (1985) refers to the sentencing court's finding that petitioner "suffer[ed] from a severe personality disorder indicating a propensity toward criminal activity" as provided in ORS 161.725 (1985) and that an assessment of that "condition" requires evaluation of "the present status of the *specific historical conditions* found by the sentencing court." (Emphasis added.) Petitioner points out that some of the "clinical impressions" documented at sentencing "were no longer present" in 2013, reasoning that he "no longer had a drug dependency," his "current involvement with religious activities gave him constructive social involvements," and "decades in prison had changed [petitioner's] mindset." Petitioner essentially contends that, in order to find that "the condition which made [petitioner] dangerous is [not] absent or in remission," the board had to find that each aspect of petitioner's "condition" documented in the original psychiatric report persisted at the time of hearing.

In response, the board agrees that "the condition" refers to the sentencing court's finding that petitioner "suffer[ed] from a severe personality disorder indicating a propensity toward criminal activity" but disagrees that every trait documented in petitioner's psychiatric report from the time of sentencing must be present in order for the board to defer parole consideration. Rather, the state argues that "the condition" as used in ORS 144.228(1)(b) (1985) simply refers to "a dangerous offender's general state of having a personality disorder predisposing him to criminal activity." According to the state, the board could permissibly conclude that "the condition which made the prisoner dangerous" was not "absent or in remission" even if the substance of petitioner's 2013 psychological evaluation differed in some respects from the psychiatric report presented to the sentencing court in 1986.

Petitioner's challenge to the board's order places at issue the meaning of the phrase "the condition which made

the prisoner dangerous is absent or in remission" as used in ORS 144.228(1)(b) (1985). We construe statutes with the "paramount goal of discerning the legislature's intent." *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). We do so by "examining the statute's text, context, and any legislative history that [is] pertinent to the analysis." *Vroom, LLC v. DMV*, 283 Or App 192, 196-97, 388 P3d 379 (2016).

Because the legislature did not define the term "condition" for purposes of the statute, we presume that the legislature intended that term to have its ordinary meaning. *State v. Ziska / Garza*, 355 Or 799, 804-05, 334 P3d 964 (2014) ("In the absence of any evidence to the contrary, we assume that the legislature intended to give [statutory] words their plain, natural, and ordinary meaning." (Internal quotation marks omitted.)). The relevant dictionary definition of "condition" includes

> "**4:** a mode or state of being * * * **b** *obs* : state with reference to mental or moral nature, temperament, character, or disposition * * * **e :** the physical status of the body as a whole <good ~> <poor ~> or one of its parts—usu[ually] used to indicate abnormality <a serious heart ~> <a disturbed mental ~> * * * **5 a** *obs* : QUALITY, ATTRIBUTE, TRAIT <here is the catalog of her ~s * * *>."

*Webster's Third New Int'l Dictionary* 473 (unabridged ed 2002). One of the pertinent dictionary definitions—indicating an abnormality in the body, *e.g.*, a "disturbed mental [condition]"—tends to support the board's construction. Another definition—referring to a quality, attribute, or trait—arguably tends to support petitioner's proposed construction insofar as it could refer to particular traits associated with a mental disorder. Consideration of the statutory scheme, however, makes it clear that the board's construction is correct.

In order to sentence petitioner as a dangerous offender under ORS 161.725 (1985), the sentencing court was required to make four findings: (1) that petitioner was "dangerous"; (2) that, because of petitioner's dangerousness, an extended period of imprisonment was required for the protection of the public; (3) that petitioner was suffering from a "severe personality disorder indicating a propensity

toward criminal activity"; and, as relevant here, (4) that he was being sentenced for a Class A felony. *Huntley*, 302 Or at 429-30. Although ORS 161.725(1) (1985) required the sentencing court to find that the defendant had a "severe personality disorder indicating a propensity toward criminal activity," the statute did not require the court to make any subsidiary findings as to the nature of that "disorder." *See Huntley*, 302 Or at 427-28 (reasoning that the "essence of the dangerous offender classification is not one specific diagnosis, but any significant mental or emotional disorder or disturbance—a lay concept—and that the finding should be based on the judge's evaluation of all the information gathered, not exclusively on the clinical diagnosis"). Nor did the sentencing court's "severe personality disorder" finding depend exclusively upon the contents of the psychiatric report. *See, e.g., id.* at 435 ("[T]he court is not bound by the conclusions of any psychotherapist but is required by statute to make his or her own findings on that issue."); *State v. Trice*, 146 Or App 15, 24, 933 P2d 345, *rev den*, 325 Or 280 (1997) (sufficient evidence supported the trial court's "severe personality disorder" finding even though the examining psychiatrists did not "officially" diagnose the defendant with such a disorder); *State v. Pryor*, 96 Or App 181, 184, 772 P2d 431, *rev den*, 308 Or 158 (1989) (dangerous-offender sentence was supported by sufficient evidence even though the psychiatric "report" simply stated that the "defendant was uncooperative and that a psychiatric analysis could not be made"); *State v. Lovelace*, 94 Or App 586, 588, 590, 767 P2d 80, *rev den*, 307 Or 571 (1989) (dangerous-offender sentence was supported by sufficient evidence despite the fact that the defendant had refused to be examined and interviewed by the reporting psychiatrist).

Thus, because the existence of a particular diagnosis by a medical professional was not a necessary predicate to the sentencing court's finding, it would be anomalous to conclude that the legislature intended to require the parole board to evaluate the persistence of a diagnosis (or the traits observed by a psychologist or psychiatrist) that may or may not have been the dispositive consideration of the sentencing court. *See Landis v. Limbaugh*, 282 Or App 284, 295, 385 P3d 1139 (2016) ("We assume that the legislature did not intend

an unreasonable result." (Internal quotation marks omitted.)). Had the legislature intended the board's inquiry to be so restricted, it would not have directed the board to consider "all information" regarding a dangerous offender, and, instead, would have directed the board to rely exclusively on the offender's psychiatric report. *See* ORS 144.228(2) (1985) (providing that the board should also consider, among other things, the offender's institutional record, his work performance while incarcerated, and his "attitude" toward various government actors and his past criminal conduct). Thus, by requiring the parole board to evaluate the current status of "the condition which made the prisoner dangerous," we conclude that the legislature intended that the board evaluate the "condition" found by the sentencing court—that is, the condition of "suffer[ing] from a severe personality disorder indicating a propensity toward criminal activity"—and that such an evaluation does not depend upon the persistence of the specific symptoms or traits present at the time of sentencing.

We find further support for our conclusion in another statute applicable to parole-consideration hearings for dangerous offenders. *See State v. Gonzalez-Valenzuela*, 358 Or 451, 471, 365 P3d 116 (2015) (relying on related statutes as context). At the time the legislature amended ORS 144.228(1)(b) (1985) to include the phrase "the condition which made the prisoner dangerous," it also amended ORS 144.226 (1979). *See* Or Laws 1981, ch 644, §§ 4, 5. As amended, ORS 144.226 (1981)[6] provided that, prior to a parole-consideration hearing, any person sentenced as a dangerous offender must receive "a complete physical, mental and psychiatric examination by a psychiatrist," and that, in a written report, the examining psychiatrist

"shall include * * * a statement as to whether or not in the psychiatrist's opinion the convicted person has *any* mental or emotional disturbance or deficiency or condition predisposing the person to the commission of any crime to a degree rendering the examined person a menace to the health or safety of others."

---

[6] ORS 144.226 has been amended multiple times since 1981. None of those amendments is pertinent to our analysis.

(Emphasis added.) The statutory directive that a psychiatrist should opine as to the presence of *any* qualifying "mental or emotional disturbance" further suggests that the legislature did not intend to confine the board's assessment to the present status of whatever diagnosis (or set of observations) was provided to the sentencing court.

In short, we conclude that the legislature intended the phrase "the condition which made the prisoner dangerous is absent or in remission" to mean that the prisoner no longer suffers from or presents the symptoms of a mental disorder that satisfies the terms of the dangerous-offender statute. *Cf. Guzman v. Board of Parole*, 200 Or App 448, 455, 115 P3d 983 (2005), *rev den*, 340 Or 34 (2006) (holding that the board's finding that the "petitioner's disorders continue to render him a danger" was supported by substantial evidence despite testimony from two psychologists describing the petitioner's disorders as "in remission or partial remission"). Accordingly, unless the board is persuaded that, at the time of a parole-consideration hearing, the prisoner's dangerous "condition" is no longer present, the board may not set a release date for that prisoner. *See* ORS 144.228(1)(b) (1985) ("In the event that the dangerous condition is found to be present, reviews will be conducted at least once every two years until the condition is absent or in remission * * *."); *see also Davis*, 341 Or at 447 ("As a practical matter, the risk of nonpersuasion falls on the prisoner.").

Here, there was substantial evidence in the record to support the board's finding that "the condition which made petitioner dangerous was not absent or in remission." The board had evidence that petitioner continued to suffer from both drug and alcohol dependencies, including the examining psychologist's determination that petitioner would "act[] out" when "disinhibited" by substance abuse. The fact that those dependencies were "in remission" by virtue of petitioner's being in a controlled environment does not undermine a finding that those dependencies would cause petitioner to be dangerous to others if he were removed from that environment. In addition, the board had evidence that petitioner had not followed treatment recommendations, including participation in substance-abuse treatment and completion of a sex-offender workbook, supporting a finding

that petitioner continued to suffer from a severe mental disorder. Furthermore, the board had evidence that petitioner suffered from atypical paraphilia and a mixed personality disorder and that he continued to present a significant risk of committing additional violent, sexual acts. In sum, based on the record before the board, a reasonable decision-maker could find that petitioner's dangerous condition remained present. *See Gearhart v. PUC*, 356 Or 216, 251, 339 P3d 904 (2014) ("Substantial evidence supports an agency's finding 'when the record, viewed as a whole, would permit a reasonable person to make that finding.'" (Quoting ORS 183.482(8)(c).)). The fact that some aspects of petitioner's condition had changed from 1986 to 2013 does not undermine the board's finding that "the condition which made [petitioner] dangerous [was not] absent or in remission." Because the board's order was supported by substantial evidence, the board did not err in deferring parole consideration for petitioner.

Affirmed.