Argued and submitted February 2, affirmed May 10, 2023

JOEL C. GUZEK,
*Petitioner,*

*v.*

BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A176059

530 P3d 510

Petitioner was convicted of various crimes that he committed in 1986 and 1987, and he was sentenced as a dangerous offender under the then-current version of ORS 161.725. He petitioned the Court of Appeals for review of the parole board's order denying his request for a release date and instead resetting the matter for another parole consideration hearing. Petitioner argues that the decision was not supported by substantial evidence or reason, and that it resulted from application of the wrong legal standard. *Held*: The board considered all the information presented to it, including, among other things, a 36-page psychological evaluation and report. It identified mental health diagnoses, traits, and symptoms; risk assessment scores; and other information that it deemed pertinent to the question before it. The board then explained why it could not, on the record before it, find that the condition that made petitioner dangerous was absent or in remission. In the absence of such a finding, the board was without authority to set a release date. It did not err.

Affirmed.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Peter G. Klym, Deputy Public Defender, Office of Public Defense Services, filed the briefs for petitioner.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jeff J. Payne, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Affirmed.

**MOONEY, J.**

Petitioner was convicted of various crimes that he committed in 1986 and 1987. He was sentenced as a dangerous offender under ORS 161.725[1]. Petitioner has had a number of parole consideration hearings conducted by the Board of Parole and Post-Prison Supervision (the board) under ORS 144.228, but it is the most recent hearing and the board's decision to defer his parole consideration date for thirty-six months that is before us on review. Petitioner assigns error to the board's denial of his "release," arguing that its decision is not supported by substantial evidence or reason, and that it resulted from application of an incorrect legal standard. Petitioner argues that the lack of sufficient evidence and reason and the application of the wrong legal standard resulted in an unfair hearing. We conclude, for the following reasons, that the board did not err. We affirm.

We review a final order of the board for legal error, substantial evidence, and substantial reason. *Jenkins v. Board of Parole*, 356 Or 186, 205, 335 P3d 828 (2014). The final order here consists collectively of Board Action Form #14 (BAF) and Administrative Review Response #8 (ARR). *Id.* at 206-07. The substantial reason requirement flows logically from, and is necessarily a part of, the substantial evidence standard, requiring the board to "connect the facts of the case and the result reached." *Id.* at 214; *see also Castro v. Board of Parole*, 232 Or App 75, 83, 220 P3d 772 (2009). We review for legal error whether the board's final order violates

---

[1] The versions of ORS 161.725 and ORS 161.735 that were applied by the court at the time petitioner was sentenced as a dangerous offender were those that were in effect when the crimes for which he was convicted actually occurred. The version of ORS 144.228 that was applied by the board at the parole consideration hearing was the version that was in effect when petitioner committed the crimes for which he was sentenced as a dangerous offender. Those statutes have since been amended. It is the 1985 version of those statutes that apply to petitioner and all citations to those statutes in this opinion are to the statutes as they existed in 1985. We list the statutes and their subsequent history, below:

ORS 161.725 (1985), amended by Or Laws 1989, ch 790, § 75; Or Laws 1993, ch 334, § 5; Or Laws 2005, ch 463, §§ 9, 14; Or Laws 2007, ch 16, § 4;

ORS 161.735 (1985), amended by Or Laws 1987, ch 248, § 1; Or Laws 1999, ch 163, § 9; Or Laws 2005, ch 463, §§ 10, 15; Or Laws 2007, ch 16, § 5;

ORS 144.228 (1985), amended by Or Laws 1989, ch 790, § 75; Or Laws 1993, ch 334, § 5; Or Laws 2005, ch 463, §§ 9, 14; Or Laws 2007, ch 16, § 4.

petitioner's due process rights. *Noble v. Board of Parole*, 327 Or 485, 498, 964 P2d 990 (1998).

Petitioner was convicted of crimes that fit into three basic categories: (1) sexual offenses against his daughter, including rape, sodomy, and incest; (2) first-degree manslaughter and various assault offenses related to a car crash in which petitioner's son was killed, and others were injured, because petitioner had been driving while under the influence of alcohol (MVA); and (3) various property offenses. He was sentenced as a dangerous offender under the then-existing versions of ORS 161.725[2] and ORS 161.735[3] on the sexual offense convictions and on a first-degree burglary conviction. The sentences for the manslaughter and assault convictions that arose from the MVA were imposed to run consecutively to the dangerous offender sentences.

The board conducted parole consideration hearings a number of times beginning in 2003, concluding each time that the condition that made petitioner dangerous under ORS 161.725 at the time of sentencing was not in remission, that he continued to be dangerous, and deferring consideration of a release date to a future hearing. The board held another parole consideration hearing in January 2021, after which it again found that defendant continued to be

---

[2] ORS 161.725(1) allows the court to sentence a defendant as a dangerous offender after finding that:

"The defendant is being sentenced for a Class A felony, and *** is suffering from a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another."

[3] ORS 161.735 provides, as pertinent:

"(1) *** if, in the opinion of the court, there is reason to believe that the defendant falls within ORS 161.725, the court shall order a presentence investigation and an examination by a psychiatrist or psychologist.

"*****

"(3) *** Each psychiatrist and psychologist appointed to examine defendant under this section shall file with the court a written report of findings and conclusions, including an evaluation of whether the defendant is suffering from a severe personality disorder indicating a propensity toward criminal activity.

"*****

"(6) If, after considering the presentence report, the examination reports and the evidence in the case or on the presentence hearing, the court finds that the defendant comes within ORS 161.725, the court may sentence the defendant as a dangerous offender."

dangerous and deferred consideration of a release date for another three years. It is the January 2021 finding and the related ruling that is now before us.

We begin with a discussion of the basic statutory framework that applies to persons sentenced as dangerous offenders. In particular, we review the statutory provisions that apply to this case, which include those in effect at the time when the crimes of conviction occurred. *Washington v. Board of Parole*, 294 Or App 497, 498, 432 P3d 372 (2018); *Edwards v. Board of Parole*, 272 Or App 183, 184 n 1, 355 P3d 166, *rev den*, 358 Or 70 (2015).[4] The original court decision to sentence petitioner as a dangerous offender was made for crimes that occurred in 1986, and as already mentioned, that decision was therefore made according to versions of ORS 161.725 and ORS 161.735 that have since been amended. At that time, defendants who qualified as dangerous offenders were subject to enhanced sentences when extended prison time was needed to protect the public "because of the dangerousness of the defendant," and when at least one specific statutory ground existed including, as relevant here, when "the defendant is being sentenced for a Class A felony, and *** is suffering from a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another." ORS 161.725(1). Whether a defendant qualified as a dangerous offender was determined by the sentencing court after a presentence investigation and psychiatric evaluation had been conducted. ORS 161.735.

---

[4] We reject petitioner's contention that the board should have applied the current version of ORS 144.228. Petitioner relies on direct criminal appeals cases that do not overrule longstanding case law holding that, in this agency setting, the board applies the statute or rule in effect at the time the inmate committed the crimes at issue.

To the extent that petitioner argues that the board violated his *ex post facto* rights, the record does not support such an argument. To establish an *ex post facto* violation, petitioner must show that the board applied the amended statute retroactively and, as a result of that retroactive application, created the risk that his punishment would increase. *Cal. Dept. of Corrs. v. Morales*, 514 US 499, 509, 115 S Ct 1597, 131 L Ed 2d 588 (1995). But the board applied the statute as it existed at the time petitioner committed his crimes, and expressly stated that even if it were to apply the later-enacted version of ORS 144.228, it would reach the same result. Petitioner, thus, failed to establish retroactive application of the statute.

Ultimately, the sentencing court's task was to decide for itself whether a defendant suffered from a severe personality disorder that predisposed them to criminal activity, because "the essence of the dangerous offender classification is not one specific diagnosis, but any significant mental or emotional disorder or disturbance—*a lay* concept[.] * * * [T]he finding should be based on the judge's evaluation of all the information gathered, not exclusively on the clinical diagnosis." *State v Huntley*, 302 Or 418, 430, 730 P2d 1234 (1986) (emphasis added). The sentencing court could, and still may, impose up to a 30-year indeterminate sentence if it found that a defendant so qualified. ORS 161.725.

During the first six months of a prisoner's commitment to a Department of Corrections (DOC) facility, the board schedules either an initial release date or, in the case of a dangerous offender, a parole consideration hearing. ORS 144.228(1)(a). ORS 144.228(1)(b) governed the board's decision-making process at the parole consideration hearing in this case. *Washington*, 294 Or App at 498. That provision provides:

> "At the parole consideration hearing, the prisoner shall be given a release date in accordance with the applicable range and variation permitted if the condition which made the prisoner dangerous is absent or in remission. In the event that the dangerous condition is found to be present, reviews will be conducted at least once every two years until the condition is absent or in remission, at which time release on parole shall be ordered if the prisoner is otherwise eligible under the rules. In no event shall the prisoner be held beyond the maximum sentence less good time credits imposed by the court."

ORS 144.228 (1)(b). The board is to set a release date for any person who was originally sentenced under ORS 161.725 as a dangerous offender when the board is able to affirmatively find that "the condition which made the prisoner dangerous is absent or in remission." In the absence of such affirmative finding, ORS 144.228 does not authorize the board to set a release date. Unless and until it can make the required statutory finding, the board's task is to set another review hearing.

In assessing whether a prisoner is still dangerous at the time of the parole consideration hearing, ORS 144.228 requires the board to consider whether there is evidence that the prisoner has a mental or emotional disorder that would satisfy the terms of the dangerous offender statute, but the board is not limited in its inquiry to the specific diagnosis or traits that were present when the prisoner was originally sentenced as a dangerous offender. *Bell v. Board of Parole*, 283 Or App 711, 713, 391 P3d 907, *rev den*, 361 Or 645 (2017). That is at least in part because "the existence of a particular diagnosis by a medical professional" is not required when the sentencing court finds that the defendant is a dangerous offender under ORS 161.725. *Bell*, 283 Or App at 719.

> "[B]y requiring the parole board to evaluate the current status of the condition which made the prisoner dangerous, we conclude that the legislature intended that the board evaluate the 'condition' found by the sentencing court—that is, the condition of suffering from a severe personality disorder indicating a propensity toward criminal activity—and that such an evaluation does not depend upon the persistence of the specific symptoms or traits present at the time of sentencing."

*Id.* at 720 (internal quotation marks omitted).

In considering whether and how long to defer a parole consideration hearing the board applies the factors listed in OAR 255-062-0016.[5]

---

[5] OAR 255-062-0016 provides this nonexclusive list of factors, one or more of which would support deferral of the parole consideration hearing date:

"(1) A determination by the Board, based on the psychological evaluation and all the information available at the hearing, that the inmate has a mental or emotional disturbance, deficiency, condition, or disorder predisposing him/her to the commission of any crime to a degree rendering the inmate a danger to the health or safety of others;

"(2) Infractions of institutional rules and discipline;

"(3) Commission of crimes subsequent to the crime of conviction;

"(4) Inmate's failure to demonstrate understanding of the factors that led to his/her criminal offense(s);

"(5) Inmate's demonstrated lack of effort to address criminal risk factors of psychological or emotional problems;

"(6) Inmate's demonstrated lack of effort to address criminal risk factors of substance abuse problems;

Here, with respect to the Class A felony convictions for first-degree rape and first-degree burglary, and pursuant to the then-effective version of ORS 161.725(1)(a), the sentencing court made findings that petitioner was:

> "a Dangerous Offender, based on the court's finding that [petitioner] suffers from a severe personality disorder and [that he] has a propensity to commit crime."

Maximum sentences of 30 years, with 15-year minimums, were imposed on those convictions, and additional sentences were imposed on the remaining convictions at that time. Petitioner was later sentenced for the MVA related convictions, and those sentences were imposed to run consecutively to those that petitioner was already serving. The cumulative sentences added up to less than 100 years.

At the board's January 21, 2021, parole consideration hearing, it interviewed petitioner and reviewed and considered a 36-page psychological evaluation dated December 16, 2020, prepared by Lynette Hamilton, PsyD, ABPP, a board-certified forensic psychologist. In determining whether to set a release date for a dangerous offender, the board applies a "preponderance of the evidence" standard in determining whether the condition that made the inmate dangerous is still present. *Davis v. Board of Parole*, 341 Or 442, 448, 144 P3d 931 (2006). "As a practical matter, the risk of nonpersuasion falls on the prisoner." *Id.* at 447.

---

"(7)  Failure to seek and maintain appropriate work or training;

"(8)  Inmate's failure to seek out and benefit from programming including but not limited to sex offender treatment, batterers intervention programs, anger management, cognitive therapy, and victim impact panels where available;

"(9)  Inmate's inability to experience or demonstrate remorse or empathy;

"(10)  Demonstrated poor planning and foresight;

"(11)  Demonstrated impulsivity; or

"(12)  Demonstrated lack of concern for others, including but not limited to any registered victims.

"(13)  Refusal to participate in Board-ordered psychological evaluation(s) and/or refusal to participate in Board hearing.

"(14)  The inmate is serving a concurrent sentence over which the Board does not have release authority, and which has a release date ten or more years from the projected parole release date on the Board sentence."

As pertinent here, Hamilton described petitioner's relevant background concerning, among other things, his formative years, family of origin, education, employment, military service, medical and mental health care, legal issues, the conduct underlying his convictions, and his years in DOC custody. Hamilton described prior evaluations conducted in the parole consideration hearing context, including some focus on sexual functioning and sexual offense history and psychological testing. Hamilton interviewed petitioner to get a sense of how he was functioning, and she administered new batteries of psychological tests and risk assessment inventories. Her conclusions, generally, were that petitioner's psychological test scores were valid, that petitioner was "reluctant to recognize or acknowledge faults or problems in himself," and that he has significant alcohol-related problems, all of which suggested that any treatment would be challenging due to petitioner being defensive and unwilling to talk about personal problems.

Hamilton diagnosed petitioner with antisocial traits, alcohol use disorder (sustained remission due to controlled environment), and pedophilic disorder (provisional). Hamilton specifically explained that petitioner's antisocial traits were "clearly present," but that without more information about whether petitioner "exhibited symptoms of conduct disorder as an adolescent," it was not clear whether he "meets full diagnostic criteria for antisocial personality disorder." The provisional diagnosis of pedophilic disorder applied because there was a "strong presumption that the diagnosis is appropriate." Even though he continued to deny the allegations that he raped and sodomized his daughter, petitioner admitted that he began a sexual relationship with a 13 year-old girl when he was 25 years old. Whether his sexual interest in young children remained "intense" was difficult to know, according to Hamilton, because of petitioner's advanced age and infirm condition, but the presumption that petitioner was a pedophile was nevertheless strong. Hamilton described her use of risk management tools—the Static-99R and the Risk for Sexual Violence Protocol (RSVP)—to identify and assess known risk factors.

The board decided not to assign a release date and to instead reset the matter for another parole consideration hearing three years later based on these findings:

> "[T]he Board finds the offender has a mental or emotional disturbance, deficiency, condition, or disorder predisposing offender to the commission of any crime to the degree rendering the offender a danger to the health or safety of others; therefore, the condition which made the AIC dangerous is not in remission and AIC does continue to remain a danger."

At petitioner's request, the board reviewed its decision and issued an ARR, in which it again explained its reasons for deferring the parole consideration hearing.[6]

Petitioner's arguments raise (1) a question about the legal standard that the board was required to apply at the parole consideration hearing, and (2) a factual question about whether the board's decision is supported by substantial evidence and reason. We have already addressed the question of which statutes apply to the board's decision, and now turn to the remaining question as to whether the board's decision is supported by substantial evidence and reason. We conclude that it was.

The board's BAF together with the ARR reflect sufficient evidence and reason for the board's decision because those records detail that the board considered all the information presented at the hearing, including the historical events that led to petitioner's incarceration as a dangerous offender in the first place, petitioner's behavioral and program activities and records spanning his years in prison, and Hamilton's psychological evaluation. The BAF and ARR identified and detailed the substance of the evidence that led the board to conclude that petitioner had a mental or

---

[6] The board expressed frustration at having to explain its decision again when it wrote in ARR #8 that petitioner's substantial evidence and reason argument was "disingenuous" and "baffling," and that the request was itself evidence of petitioner's "deceitfulness." Those judgments about the motivation or reasons for petitioner's request for review were gratuitous. Those gratuitous comments were not necessary to the board's decision, they suggested that the board might use petitioner's lawful request for review against him, and they were, in fact, likely to draw more questions from petitioner. Despite those ill-advised comments, they do not cancel the adequacy of the board's decision on this record.

emotional disturbance or condition that predisposed him to commit crimes "to a degree rendering [petitioner] a danger to the health or safety of others."

We reject petitioner's argument that the board was required to use the phrase "dangerous criminal activity" rather than "any crime" in describing its determination that petitioner's mental or emotional condition predisposed him to criminal activity to a degree that rendered him dangerous to others. That argument isolates and latches onto the phrase "dangerous criminal activity" as used in *Huntley* to improperly conclude that, here, the board did not adequately explain its determination that petitioner remained dangerous within the meaning of the dangerous offender statute. *Huntley* did not change the board's role, and it did not change the standard for the board to follow, in parole consideration hearings under ORS 144.228. The board's assessment of petitioner's dangerousness was included as part of its explanation for why it could not make the finding that the condition that made petitioner dangerous was in remission. And without that finding, the board was without authority to set a release date.

The BAF referred to Hamilton's report and specifically mentioned her diagnoses for petitioner—"antisocial traits, alcohol use disorder in sustained remission in a controlled environment, pedophilic disorder (provisional)." The BAF also explained in more detail Hamilton's opinion that petitioner's "antisocial traits are clearly present" and connected those traits with concrete examples of petitioner's failure to conform to social norms. The BAF described the board's "particular concern" that Hamilton assessed petitioner's chronic risk for violence as moderate, concluding that the elevated score in a person of advanced age was concerning and directly pertinent to his dangerousness.

The BAF and ARR reflect that the board also examined petitioner's lack of effort and understanding related to the sex offenses, including his complete denial of any responsibility for those crimes, as it considered all the information before it. In short, the board specifically identified the pertinent diagnoses gleaned from Hamilton's report, petitioner's lack of insight into his own criminality, his failure to take

responsibility for sexually assaulting his daughter, his failure to engage in sustained programming while in prison, and his nonexistent parole plan, as it explained why it was setting another parole consideration hearing. The board also identified the factors on which it relied to set the next hearing out another three years. The BAF and ARR provide the law and the facts on which the board's decision was made and it reflects the reasoning for that decision. That is what the law requires. *Jenkins*, 356 Or at 208.

The board's task was to consider and evaluate all information brought to it to determine whether it could affirmatively find that "the condition which made the prisoner dangerous is absent or in remission." It was not able to make that finding here. The fact that Hamilton could not provide an unqualified diagnosis of antisocial personality disorder or pedophilic disorder does not mean that the board was required to affirmatively find that the petitioner no longer had a mental or emotional disorder that made him dangerous or that such disorder was in remission. To the contrary, the board was obligated to consider all of the information before it. Like the judge who originally found petitioner to be a dangerous offender, the board's job was to reach a conclusion about mental disorders and dangerousness as a "lay concept," not entirely tethered to a psychological or medical diagnosis. *Huntley*, 302 Or at 430. In the absence of the required affirmative finding, ORS 144.228 required the board to set another review hearing. That is what it did.

Affirmed.