Argued and submitted June 24, 2022, reversed and remanded August 9, 2023

GERALD OSCAR PERSON,
*Petitioner,*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A174283

535 P3d 779

For crimes committed in 1988 and 1989, petitioner was sentenced as a dangerous offender under ORS 161.725 (1987), of which, among other things, required the sentencing court to find that he suffered from a severe personality disorder indicating a propensity toward dangerous criminal activity. In April 2020, the Board of Parole and Post-Prison Supervision deferred petitioner's parole consideration for 24 months pursuant to ORS 144.228 (1987) on the basis that the condition that makes him dangerous is not absent or in remission. Petitioner seeks judicial review of the deferral order. In his sole assignment of error, he argues that the board "applied incorrect standards and failed to demonstrate substantial evidence and reason in several ways." *Held*: The board's order lacks substantial reason, in that the board found that petitioner has "a mental or emotional disturbance, deficiency, condition, or disorder" predisposing him to certain crimes and concluded "therefore" that the condition that made him dangerous (*i.e.*, a severe personality disorder predisposing him to dangerous crimes) was not in remission, without adequately explaining how that finding leads to that conclusion.

Reversed and remanded.

Kyle Krohn, Deputy Public Defender, argued the cause for petitioner. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joanna Hershey, Assistant Attorney General.

Before Aoyagi, Presiding Judge, Lagesen, Chief Judge, and Mooney, Judge.

AOYAGI, P. J.

Reversed and remanded.

Mooney, J., dissenting.

## AOYAGI, P. J.

For crimes committed in 1988 and 1989, petitioner was sentenced as a dangerous offender under ORS 161.725 (1987),[1] which, among other things, required the sentencing court to find that he suffered from a severe personality disorder indicating a propensity toward dangerous criminal activity. In April 2020, the Board of Parole and Post-Prison Supervision deferred petitioner's parole consideration for 24 months pursuant to ORS 144.228 (1987)[2] on the basis that the condition that makes him dangerous is not absent or in remission. Petitioner seeks judicial review of the deferral order. In his sole assignment of error, he argues that the board "applied incorrect standards and failed to demonstrate substantial evidence and reason in several ways." As explained below, we agree that the board's order lacks substantial reason, in that the board found that petitioner has "a mental or emotional disturbance, deficiency, condition, or disorder" predisposing him to certain crimes and concluded "therefore" that the condition that made him dangerous (*i.e.*, a severe personality disorder predisposing him to dangerous crimes) was not in remission, without adequately explaining how that finding leads to that conclusion. We reverse and remand on that basis, without reaching petitioner's other arguments.

---

[1] ORS 161.725 (1987), *amended by* Or Laws 1989, ch 790, § 75; Or Laws 1993, ch 334, § 5; Or Laws 2005, ch 463, §§ 9, 14; Or Laws 2007, ch 16, § 4.

[2] ORS 144.228 (1987), *amended by* Or Laws 1991, ch 318, § 2; Or Laws 1993, ch 334, § 3; Or Laws 2009, ch 660, § 4. The order on review expressly states that the board is "[a]pplying the law in effect at the time of the commitment offense(s)." We therefore understand the board to have applied ORS 144.228 (1987) in deciding to defer parole consideration, and we conduct our analysis accordingly. The board's order also states that it would have reached the same result under "the current rules." In context, that statement is ambiguous; perhaps the board meant it would reach the same result under the current version of ORS 144.228. In any event, we do not understand the board to have concluded that the current version of the statute actually applies to petitioner, nor has the board explained how the current version would apply. *See generally Morrison v. Board of Parole*, 277 Or App 861, 866, 374 P3d 948, *rev den*, 360 Or 465 (2016) (holding that the board could apply a newer version of ORS 144.228 without violating *ex post facto* principles where the intervening statutory amendments were procedural in nature and "the substantive standard for determining whether a dangerous offender qualifies to have the board set a parole release date" had not changed). If the board means to rely on the current version of ORS 144.228 in this case, it can clarify that point on remand and explain its reasoning in accord with the substantial reason requirement.

We begin with an overview of the applicable legal framework. Under ORS 161.725 (1987), a trial court could impose an indeterminate sentence of 30 years on a person found to be a dangerous offender. To sentence someone as a dangerous offender, the court had to find (1) "that because of the dangerousness of the defendant an extended period of confined correctional treatment or custody is required for the protection of the public"; (2) that the defendant was being sentenced for (i) a Class A felony, or (ii) a felony that seriously endangered the life or safety of another and had previously been convicted of a felony arising from a different criminal episode; and (3) that the defendant was "suffering from a severe personality disorder indicating a propensity toward criminal activity." ORS 161.725(1), (2) (1987).

In *State v. Huntley*, 302 Or 418, 730 P2d 1234 (1986), the Supreme Court construed ORS 161.725 (1985).[3] As to the requirement that the defendant have a "severe personality disorder," the court explained that the requirement contemplates both that the defendant is "mentally abnormal" (as opposed to normal but dangerous) and that the defendant has a propensity toward "dangerous criminal activity" (not just any criminal activity):

> "The statutory language requiring that the court must find that the defendant is suffering from a severe personality disorder indicating a propensity toward criminal activity is most troublesome. We have already mentioned that those words mean that there must be a finding that the defendant is suffering from a severe mental or emotional disorder indicating a propensity toward continuing *dangerous* criminal activity. The statute is a dangerous offender statute, not an habitual offender statute, and it would make no sense for a court to find that someone has engaged in dangerous conduct but has a propensity in the future to continue only non-dangerous criminal activity such as committing forgery. Further, the statute contemplates a severe personality disorder. The statute refers to a mentally abnormal person and not to a dangerous normal person."

*Id.* at 430 (emphasis in original; footnote omitted).

---

[3] The version of ORS 161.725 that the court construed in *Huntley* is identical to the 1987 version that we address in this case. *See Huntley*, 302 Or at 422 (quoting statute).

The court then went on to discuss how sentencing courts should approach, in practice, the task of determining whether someone has a "severe personality disorder." The court described that aspect of the statute as "most troublesome." *Id*. It explained that a sentencing court should consider the presentence report, the psychiatric report, and the evidence from the trial or presentencing hearing. *Id*. at 423, 428. As for what to do with that information, the court noted some guidance provided in a 1974 publication of a national judicial council, but it found that guidance "inadequate" and "too vague" to be useful. *Id*. at 430-31. Instead, the court recommended looking to the American Psychological Association's *Diagnostic and Statistical Manual of Mental Disorders* (3d Ed 1980) (DSM), which defines "antisocial personality disorder" and "other personality disorders that may be relevant for application in other cases." *Id*. at 432-34. Finally, applying the articulated principles, and looking to the DSM, the court agreed with the sentencing court that the defendant's antisocial personality disorder qualified as a severe personality disorder. *Id*. at 435; *see also id*. at 431 ("We believe that the legislature in utilizing the statutory language referring to dangerousness and persons with severe personality disorders meant to include persons with antisocial personality disorders who have committed violent acts against other persons."). On the same day, the court similarly concluded in *State v. Nickell*, 302 Or 439, 444, 730 P2d 1246 (1986), that "chronic paranoid schizophrenia superimposed over an antisocial personality disorder amounts to a severe personality disorder." (Internal quotation marks omitted.)

Several decades later, in *Bell v. Board of Parole*, 283 Or App 711, 391 P3d 907, *rev den*, 361 Or 645 (2017), we considered the relationship between the sentencing court's original decision to sentence a person as a dangerous offender and the determination that the Board of Parole and Post-Prison Supervision must make under ORS 144.228 (1985)[4]

---

[4] ORS 144.228 (1985), which we construed in *Bell*, is materially identical to ORS 144.228 (1987), the version of the statute that we understand the board to have applied in this case. As we noted in *Bell*, in 1993, the legislature amended ORS 144.228 to remove the language regarding "the condition that made the prisoner dangerous" being "absent or in remission." 283 Or App at 712 n 2 (citing Or Laws 1993, ch 334, § 3).

as to whether "the condition which made the prisoner dangerous" is now "absent or in remission," such that the person should be considered for parole.

We agreed with the parties that "the condition which made the prisoner dangerous" refers to the sentencing court's finding under ORS 161.725 that the person suffers "from a severe personality disorder indicating a propensity toward criminal activity." *Id*. at 712, 717-18. We also recognized *Huntley*'s construction of ORS 161.725 as specifically requiring a propensity toward "*dangerous* criminal activity.'" *Id*. at 713 (quoting *Huntley*, 302 Or at 430 (emphasis in *Huntley* and *Bell*)). We then proceeded to address the disputed issue, which was whether the board's order was supported by substantial evidence, particularly given differences between a 1986 psychiatric report and a 2013 psychological evaluation. *Id*. at 717. In concluding that it was, we explained that a petitioner's dangerous condition (the condition of having a severe personality disorder indicating a propensity toward dangerous criminal activity) may persist, even if a particular "diagnosis" has changed or "specific symptoms or traits present at the time of sentencing" are no longer present. *Id*. at 719-20.

The upshot of *Huntley* and *Bell* together—as relevant here—is that, to have sentenced a person as a dangerous offender under ORS 161.725 (1987), the sentencing court must have found that the person suffers from a severe personality disorder indicating a propensity toward continuing dangerous criminal activity and that, to grant parole consideration under ORS 144.228 (1987), the board must find that the person's severe personality disorder indicating a propensity toward continuing dangerous criminal activity is absent or in remission. As to the latter, the board's evaluation of whether a person continues to suffer from the qualifying condition does not depend upon the persistence of the specific symptoms or traits present at the time of sentencing.

We most recently applied that standard in *Guzek v. Board of Parole*, 325 Or App 795, 530 P3d 510 (2023), in which we affirmed an order deferring parole consideration. In that case, the petitioner contended that the board had

applied the wrong legal standard, pointing to the board's finding that he was predisposed "to the commission of any crime to the degree rendering [him] a danger to the health or safety of others." *Id*. at 803. We rejected the petitioner's argument, which depended on taking the words "any crime" out of context, and we concluded that the board in fact applied the correct legal standard. *Id*. at 804. That is, we understood the board to have found in substance that the petitioner was predisposed to "dangerous criminal activity," as required under *Huntley* and *Bell*, even though it did not use those exact words. *Id*. at 804-05. We also concluded that the board's findings were supported by substantial evidence and that its order showed substantial reason. *Id*. at 803.

We now turn to the specific facts of this case. The board found that petitioner "has a mental or emotional disturbance, deficiency, condition, or disorder predisposing [him] to the commission of any crime to the degree rendering [him] a danger to the health or safety of others; therefore the condition which made [him] dangerous is not in remission and [he] does continue to remain a danger."[5] On that basis, the board deferred parole consideration for 24 months to September 27, 2022. The board described in some detail the "factors" and evidence that it considered in reaching its decision, including a psychologist's report based on a psychological evaluation of petitioner completed in February 2020, wherein the psychologist opined that petitioner has antisocial personality disorder with narcissistic features and noted a high level of psychopathy; petitioner's testimony at the April 2020 board hearing; petitioner's disciplinary history; and petitioner's lack of a written release/parole plan.

Petitioner challenges four aspects of the board's order: (1) the board's reliance on its finding that petitioner has a "mental or emotional disturbance, deficiency, condition, or disorder," when the legal standard requires a severe personality disorder; (2) the board's reliance on its finding

---

[5] That statement appears in the board action form. The board made a very similar statement in its administrative review response. Those documents together make up the final order on review. *Jenkins v. Board of Parole*, 356 Or 186, 207, 335 P3d 828 (2014).

that petitioner is predisposed "to the commission of any crime to the degree rendering [him] a danger to the health or safety of others[,]" when the legal standard requires a propensity toward dangerous criminal activity; (3) the board's failure to address whether petitioner could be adequately supervised in the community; and (4) the board's adoption of the psychologist's findings, rather than expressing its reasoning in its own words.

We review the board's order "for legal error, substantial evidence, and substantial reason." *Bell*, 283 Or App at 713; *see also Jenkins v. Board of Parole*, 356 Or 186, 213-14, 335 P3d 828 (2014) (board orders must "satisfy the substantial reason requirement that this court has held is implied in the substantial evidence standard of review to which the board's orders are subject under ORS 183.482(8)(c)"); ORS 144.335(3) ("The Court of Appeals may affirm, reverse or remand [a parole board order] on the same basis as provided in ORS 183.482(8)."); ORS 183.482(8)(c) (providing for substantial evidence review).

Here, petitioner contends that the board applied the wrong legal standard and, thus, both committed legal error and produced an order that lacks substantial reason, when it relied on a finding that petitioner has a "mental or emotional disturbance, deficiency, condition, or disorder," rather than a "severe personality disorder," to conclude that he remains dangerous. *See Jenkins*, 356 Or at 200 (explaining that "substantial reason" requires the board to explain the connection between the facts as found and the result reached). The board responds to that argument only briefly, asserting that having a severe personality disorder was the legal standard applicable to the sentencing court's initial determination that petitioner is a dangerous offender, whereas ORS 144.228 governs the board's parole consideration process.[6]

---

[6] To the extent that the board means to suggest that whether a person has a "severe personality disorder" is irrelevant after initial sentencing, that position is contrary to *Bell*, which recognizes that the board's task in deciding whether to grant parole consideration under ORS 144.228 (1987) is to determine whether a petitioner's condition of having a severe personality disorder indicating a propensity toward continuing dangerous activity is absent or in remission. Conversely, if the board means only that it need not affirmatively find the presence of a severe

We agree with petitioner that the board's order lacks substantial reason. As noted above, the board found that petitioner has a "mental or emotional disturbance, deficiency, condition, or disorder" that predisposes him to certain crimes, and it "therefore" concluded that his dangerous condition is not absent or in remission, such that parole may be deferred under ORS 144.228 (1987). However, as previously described, under *Huntley* and *Bell*, the "condition" relevant to dangerousness is the defendant's "severe personality disorder indicating a propensity toward continuing dangerous criminal activity." *Huntley*, 302 Or at 430; *Bell*, 283 Or App at 713 (same). The outer limits of what constitutes a "severe personality disorder" are not well delineated, but a "mental or emotional disturbance, deficiency, condition, or disorder" would appear to encompass a broader universe of conditions than a "severe personality disorder" as described in *Huntley*. *See, e.g.*, *Huntley*, 302 Or at 431-34 (describing the diagnostic criteria for "antisocial personality disorder," which include that "[a]ntisocial behavior is not due to either Severe Mental Retardation, Schizophrenia or manic episodes," and explaining that "[t]he essence of dangerousness appears to be a paucity of feeling concern for others" (internal quotation marks omitted)).

Because the order fails to adequately explain how the board's finding leads to its legal conclusion, the order lacks substantial reason. In so concluding, we emphasize that the issue before us is not whether the evidence that the board considered (as previously described) would support a different finding that aligns with the legal standard.[7] It is for the board to decide on remand how to craft an order that demonstrates substantial reason under the applicable standard.

Reversed and remanded.

---

personality disorder to defer parole consideration, given the allocation of the burden of persuasion under ORS 144.228, that is certainly true, but it ignores the board's findings in this case and fails to engage with petitioner's argument.

[7] Notably, the board does not contend that its finding that petitioner has "a mental or emotional disturbance, deficiency, condition, or disorder" should be understood as a finding that petitioner continues to have a severe personality disorder predisposing him to dangerous crimes. We find it difficult to reconcile the dissent's generous view of the board's order with the position actually taken by the board on judicial review.

**MOONEY, J.,** dissenting.

The board's decision in this case is governed by ORS 144.228 as it existed in 1987.[1] That statute requires the board to set a release date for any person who was originally sentenced as a dangerous offender under ORS 161.725 when the board is able to affirmatively find that the "the condition which made the prisoner dangerous is absent or in remission." ORS 144.228(1)(b). In the absence of that affirmative finding, ORS 144.228 does not authorize the board to set a release date. Unless and until it can make the findings required by ORS 144.228, the board's statutorily defined task is to set another review hearing. The record and the final order[2] provide sufficient evidence, supported by sufficient reason, in support of the board's decision to defer parole consideration and to set another review hearing for that purpose.

The majority's discussion of *State v. Huntley*, 302 Or 418, 730 P2d 1234 (1986), is not necessary given that this case is about the board's parole consideration hearing. It is not about the sentencing court's decision to sentence defendant as a dangerous offender in the first place. We are conducting judicial review of the parole board's decision under ORS 144.228. The question for the parole board was whether the condition that made petitioner dangerous when he was sentenced as a dangerous offender was either absent or in remission at the time of the parole consideration hearing. The scope of that question was clarified in *Bell v. Board of Parole*, 283 Or App 711, 391 P3d 907, *rev den*, 361 Or 645 (2017), where we held that the board's question under ORS 144.228 was not strictly limited to "the condition" found at the original sentencing hearing. *Huntley* "did not change the standard for the board to follow, in parole consideration hearings under ORS 144.228." *Guzek v. Board of Parole*, 325 Or App 795, 804, 530 P3d 510 (2023). Neither did *Bell*.

The board is required to determine whether any condition that would qualify the petitioner as dangerous

---

[1] All references to ORS 144.228 are to the 1987 version.

[2] The final order consists of both the Board Action Form (BAF) and the Administrative Review Response (ARR). *Jenkins v. Board of Parole*, 356 Or 186, 206-07, 335 P3d 828 (2014).

under ORS 161.725 is present at the time of the parole consideration hearing. *Bell* makes clear that the board's obligation is to broadly consider those conditions that might make the petitioner dangerous, even if a condition that is present may not have been one that the sentencing court relied upon. The record establishes that the board did that here. As I understand it, the majority is not suggesting that the decision to defer consideration of early release on parole is wrong here, only that the board should have done a better job of explaining why it reached that conclusion.

But the record, when reviewed in its entirety, supports the board's order. The board's order provides sufficient explanation of its reliance on the evidence and how it reached its determination that it could not make the findings necessary to set a release date under ORS 144.228. That statute provides that the board may set a release date:

> "*** if the condition which made the prisoner dangerous is absent or in remission. In the event that the dangerous condition is found to be present, reviews will be conducted at least once every two years until the condition is absent or in remission, at which time release on parole shall be ordered if the prisoner is otherwise eligible under the rules. In no event shall the prisoner be held beyond the maximum sentence less good time credits imposed by the court."

The board was not required to make affirmative findings in the absence of findings that would require it to set a release date, and yet it did so here. And it is those findings that the majority concludes demonstrate the failure of substantial evidence and reason. I agree that the board's order is not artfully written. But in my view, the board identified the information presented to it and then discussed it in such a way as to reveal how it weighed that evidence and reached its decision. The board discussed the evidence of petitioner's high to moderate risk for recidivism and future violence, noted his impulsivity and irresponsibility and his antisocial personality disorder diagnosis, and his lack of remorse and insight into the harm he has caused by his criminal acts. It tied that evidence to the legal standards it was required to apply and stated its conclusion. That is enough.

While there might be value in sending this back to the board to improve its language choices and forms, I think it is safe to assume that the board and its lawyers will work on those forms, especially given the recent language issues revealed in *Guzek*. I would affirm the board's decision because its order is basically adequate for the purpose of setting another parole consideration hearing. I dissent.